428 So.2d 235 (1983)
Richard Duane MONDY, Petitioner,
v.
Carol A. MONDY, Respondent.
No. 60559.
Supreme Court of Florida.
March 3, 1983.
*236 Elliot Zisser of Zisser, Robison, Spohrer, Wilner & Harris, Jacksonville, for petitioner.
John R. Forbes, Jacksonville, for respondent.
PER CURIAM.
We have for review the district court decision in Mondy v. Mondy, 395 So.2d 193 (Fla. 1st DCA 1981), because of conflict with Detko/Roberts v. Stikelether, 370 So.2d 383 (Fla. 4th DCA 1979), and Wheeler v. Wheeler, 383 So.2d 655 (Fla. 2d DCA 1980). We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and quash Mondy.
The Mondys were married in 1973. In 1978 Richard Mondy left the couple's Alabama home, taking their two young sons with him. He and the boys settled in Idaho where he established residency and filed for divorce. Sometime later Carol Mondy left Alabama and, upon being served notice while in Texas, she went to Idaho, entered an appearance in the proceedings, and, among other things, requested custody of the children. The court awarded temporary custody to the father, with visitation rights to the mother, and ordered that the children not be removed from Idaho. A few days later, however, the mother took the children and flew to Jacksonville, Florida.
After final hearing, the Idaho court granted the divorce, awarded the father physical custody of the children, and placed legal custody with the court clerk until further order. The father then petitioned the circuit court in Duval County, Florida, for recognition and enforcement of the Idaho decree. The mother responded with a petition seeking establishment and modification of the Idaho decree to give her custody of the children. The court awarded her temporary custody and ordered an inquiry into the best interests and welfare of the children. The court denied the father's motions to vacate and set aside its order and to dismiss, for lack of subject matter jurisdiction, the mother's petition.
On appeal the first district affirmed the trial court's rulings. In dissent, however, Judge Joanos commented that the Florida court should have deferred to the Idaho court under the Uniform Child Custody Jurisdiction Act (UCCJA) because that court's jurisdiction over the matter was superior to the Florida court's jurisdiction. We agree and find that the Duval Circuit Court, in view of the outstanding Idaho proceedings and decree, should have declined to exercise its jurisdiction in this instance.
Growing public concern over the increasing incidence of child snatching and forum shopping in custody cases prompted approval of the UCCJA by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1968. The commissioners' prefatory note states that the UCCJA "is designed to bring some semblance of order into the existing chaos." 9 U.L.A. 114 (1979). The UCCJA has currently been adopted in forty-some states.[1] Florida adopted the UCCJA through chapter 77-433, Laws of Florida, codified as sections 61.1302  61.1348, Florida Statutes (1979).
*237 The general purposes of the act are to:
(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.
(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in the state which can best decide the case in the interest of the child.
(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.
(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.
(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.
(6) Avoid relitigation of custody decisions of other states in this state insofar as feasible.
(7) Facilitate the enforcement of custody decrees of other states.
(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.
(9) Make uniform the law with respect to the subject of this act among states enacting it.
§ 61.1304. There are four possible bases for the exercise of a court's jurisdiction:
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state:
1. Is the home state of the child at the time of commencement of the proceeding, or
2. Had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;
(b) It is in the best interest of the child that a court of this state assume jurisdiction because:
1. The child and his parents, or the child and at least one contestant, have a significant connection with this state, and
2. There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(c) The child is physically present in this state and:
1. The child has been abandoned, or
2. It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected; or
(d)1. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), paragraph (b), or paragraph (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and
2. It is in the best interest of the child that a court of this state assume jurisdiction.
§ 61.1308(1). "Home state" is defined as the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent for at least 6 consecutive months or, in the case of a child less than 6 months old, the state in which the child lived from birth with any of the persons *238 mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6-month or other period.
§ 61.1306(5). Jackson v. Jackson, 390 So.2d 787 (Fla. 1st DCA 1980); Hegler v. Hegler, 383 So.2d 1134 (Fla. 5th DCA 1980). Mere physical presence of the child within a state is not generally sufficient by itself to confer jurisdiction to make a child custody determination. § 61.1308(2). Trujillo v. Trujillo, 378 So.2d 812 (Fla. 3d DCA 1979).
In the instant case the trial court assumed jurisdiction under subsection 61.1308(1)(b)1 and 2, determining that its exercise of jurisdiction would be in the best interest of the children. The district court found a sufficient predicate for the trial court's assumption of jurisdiction. The district court recognized the father's argument that the UCCJA controlled the case and would deprive Florida of jurisdiction, but went on, however, to comment that
neither party comes before this Court with clean hands, and somewhere someone has to make an attempt to stop the childnapping and determine what is in the best interests of the children.
395 So.2d at 195. Preventing further harm to the children involved is the guiding aim of the UCCJA, see § 61.1304, and we agree that the jumping back and forth from court to court must stop.
We find that the circuit court should have refused the case because the Idaho court had already followed the UCCJA in making its determination, presumably in the best interest of these children. These children appear to have no "home state." They had resided in Idaho for less than six months prior to their father being given temporary custody, but, likewise, they had been in Florida for less than six months when the circuit court gave their mother custody. Moreover, we do not find that this case meets the significant connection test set out in section 61.1308(1)(b). Compare Reeve v. Reeve, 391 So.2d 789 (Fla. 1st DCA 1980).
This case is similar to Detko/Roberts v. Stikelether, 370 So.2d 383 (Fla. 4th DCA 1979), where the father voluntarily appeared in an Alabama custody proceeding, suffered an adverse ruling, took the child, and proceeded to litigate anew in Florida. The fourth district correctly held that the circuit court should have deferred to the Alabama courts and should have refused to exercise its jurisdiction. The second district came to the same conclusion on similar facts in Wheeler v. Wheeler, 383 So.2d 655 (Fla. 2d DCA 1980). We approve Detko/Roberts and Wheeler.
In the instant case the mother voluntarily appeared in the Idaho court proceeding and, following an adverse ruling, removed the children from Idaho in violation of a court order.[2] Although the father had originally taken the children unilaterally, we find this to be no justification for the mother's doing likewise, especially when she flaunted a court order in taking the boys away. See Bias v. Bias, 374 So.2d 64 (Fla. 3d DCA 1979). At the risk of sounding trite, we reiterate that two wrongs do not make a right. Here, however, the wife engaged in exactly the kind of conduct which the UCCJA was designed to discourage. Because the Idaho court had jurisdiction of this custody proceeding and because the mother violated the clean hands provisions of section 61.1318,[3] we find that the circuit *239 court should have refused to exercise its jurisdiction. We, therefore, quash the district court's affirmance of the trial court's rulings and declare the Florida trial court without jurisdiction in this cause.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
ADKINS, J., dissents with an opinion.
ADKINS, Justice, dissenting.
I dissent.
In custody matters the "polestar" has always been the welfare of the child. The appellate courts in the past have relied upon the judgment of the trial judge in making this determination. The distortion of the law by the majority has clouded the polestar to such an extent that trial judges will be guided toward a rocky legal question instead of the smooth channel leading to the best welfare of the child. I agree with the court in Mondy v. Mondy, 395 So.2d 193 (Fla. 1st DCA 1981), when it said:
Section 61.1308(1)(b), Florida Statutes, provides that a court of this state has jurisdiction to make a child custody determination if it is in the best interest of the child that the court assume jurisdiction because: (1) the child and his parents, or the child and at least one contestant, have a significant connection with this state; and (2) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. The statutory provision "does not require that the child's only `significant connection' be with the State of Florida in order for jurisdiction of the Florida court to attach. It only requires that the child have a `significant connection' with this state." Hofer v. Agner, 373 So.2d 48, 51 (Fla. 1st DCA 1979). In the instant case, the trial court made the following uncontested finding:
The wife immediately removed herself and the minor children to Jacksonville, Florida, where the family had previously lived and where her father resides and where she owns real property and where the children have friends and spent part of their earlier lives and immediately petitioned this court for a dissolution of marriage.
A similar finding was held to establish an appropriate jurisdictional nexus in Hofer, and in that case there were even more compelling reasons for regarding the other state as the appropriate forum for litigating the issue of child custody. We also note the trial court's finding that:
It appears now that the children are in a safe and healthy environment, living in a modest home in Jacksonville, Florida, in a neighborhood that the children are familiar with and are enrolled in appropriate schools and are attending church and other desirable functions on a regular basis.
....
Section 61.1308(1)(c)(2), Florida Statutes, also provides that a Florida court may exercise jurisdiction when a child is physically present in this state and it is necessary in an emergency to protect the child because he or she has been subjected to or threatened with mistreatment or abuse or otherwise neglected. In this case, the Mother has alleged that the "children had been abused and they had regressed in their speech patterns and were in an extreme state of emotional distress." Regardless of the truth of this particular allegation, the trial court may, at least temporarily, assume jurisdiction to insure that the children are not threatened with mistreatment, abuse, or neglect.
395 So.2d at 195-96.
In Reeve v. Reeve, 391 So.2d 789 (Fla. 1st DCA 1980), the First District Court of Appeal held that a Florida court could exercise jurisdiction when the mother, who sought modification of a custody order, resided in Florida while the child and father lived in New Jersey. The court observed as follows:

*240 Although the child has resided in New Jersey since July, 1975, the wife has apparently resided in Florida since the dissolution and has not lost contact with the child, having visited with her in October, 1976, December, 1978, and the summer of 1979. Under these circumstances, the child and one contestant, the wife, have a significant connection with this state.
As to the second part of the test, for purposes of determining subject matter jurisdiction under Section 61.1308, it is not the relative wealth of evidence available in either state that is at issue, rather, whether there exists in this state substantial evidence regarding the child's present or future care, protection, training, and personal relationships. While the bulk of evidence regarding the child's present care, protection, training, and personal relationships may now exist in New Jersey, there nevertheless exists in Florida substantial evidence regarding her future care, protection, training, and personal relationships since the wife, who is seeking permanent custody, resides in this state. Thus the Florida court does have subject matter jurisdiction under Section 61.1308(1)(b), Florida Statutes.
Id. at 791 (footnote omitted).
If the situation in Reeve satisfied the "significant connection" test, then the facts in the case sub judice certainly must also. In Reeve, the mother was the only family member living in Florida, and she had only seen her out-of-state child three times in four years. The contacts with Florida in the case sub judice, on the other hand, are significantly greater. The mother and both of the children live here and are evidently involved members of their community. In light of Reeve, these contacts certainly provide adequate grounds for the exercise of jurisdiction by the circuit court.
Reeve is distinguishable from the situation here because the initial divorce and custody rulings in that case were secured in Florida, before the husband and child moved to New Jersey, and so it might be argued that the court later found "substantial contacts" because of its earlier exercise of jurisdiction. That argument, however, ignores that "[t]he fact that the original divorce decree ... was obtained in Florida does not constitute `sufficient connection' to satisfy the requirement of [§ 61.1308(1)(b)1]." Matteson v. Matteson, 379 So.2d 677, 680 (Fla. 2d DCA 1980). See also Brown v. Tan, 395 So.2d 1249 (Fla. 3d DCA 1981). Thus the Reeve court must have based its finding of "substantial contacts" on something other than the fact that the original dissolution and custody orders were obtained in Florida.
The majority opinion cites the ruling in Detko/Roberts v. Stikelether, 370 So.2d 383 (Fla. 4th DCA 1979). In Detko/Roberts a woman with custody of her daughter moved to Alabama while her former husband remained in Florida. When the woman later filed in Alabama for modification of the Florida custody order, the husband appeared and participated in the proceedings. Before they were concluded, however, the husband took the child, returned to Florida, and petitioned to be awarded custody. The Florida court refused to do so but did grant him visitation rights. The Fourth District Court of Appeal reversed the trial court, holding that jurisdiction properly belonged in Alabama.
The cases are distinguishable. In Detko/Roberts, the mother from whom the child was taken had legal custody pursuant to court order. In this case, the father from whom the children were taken had himself improperly taken them in the first place. His hands are not clean. One who is himself guilty of childnapping cannot expect the proceedings by which he acquired custody to be given the same recognition as if he had done so by the established and proper procedure.
Consideration of all the factors in this case convinces me that it was not improper for the Florida court to exercise jurisdiction. First, the children and their mother have significant connections with this state. Second, there is available in Florida substantial evidence regarding those involved in this matter. And finally, petitioner's contention that the Florida court ought not *241 to have rewarded respondent's childnapping by considering her petition for modification is unconvincing because he too was guilty of the same misconduct. As the district court stated, "somewhere someone has to make an attempt to stop the childnapping and determine what is in the best interests of the children." Mondy, 395 So.2d at 195. There was a sufficient basis for the circuit court's exercise of jurisdiction, and so I would affirm the district court's ruling herein, and not uproot the children.
NOTES
[1] Numerous articles have been written about the UCCJA. See, e.g., Coombs, Interstate Child Custody: Jurisdiction, Recognition, and Enforcement, 66 Minn.L.Rev. 711 (1982); Frumkes & Elser, The Uniform Child Custody Jurisdiction Act  The Florida Experience, 53 Fla.B.J. 684 (1979); Kutun & Fox, Closing the Custody Floodgate: Florida Adopts the Uniform Child Custody Jurisdiction Act, 6 Fla.St. U.L.Rev. 409 (1978); Bodenheimer, Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications, 65 Cal.L.Rev. 978 (1977).
[2] The Idaho court later held her in contempt for taking the children in violation of its order.
[3] Paragraphs (1) and (2) of § 61.1318 provide as follows:

(1) If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct, the court may decline to exercise jurisdiction if this is just and proper under the circumstances.
(2) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state, the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.