461 So.2d 1364 (1984)
Kevin HICKEY, Appellant,
v.
Lola Ann BAXTER, Appellee.
No. AY-441.
District Court of Appeal of Florida, First District.
December 28, 1984.
*1365 Ben R. Patterson, III, Patterson & Traynham, Tallahassee, for appellant.
Anthony L. Bajoczky and Joseph A. Bulone, Barrett & Bajoczky, Tallahassee, for appellee.
ZEHMER, Judge.
This case involves simultaneous child custody proceedings in Florida and Virginia. Both states have adopted the Uniform Child Custody Jurisdiction Act (UCCJA).[1]
Kevin Hickey, a resident of Virginia, appeals the denial of his motion to vacate the final judgment awarding custody of his two minor children to their mother, Lola Ann Baxter, and ordering him to pay child support, arrearages, attorney's fees, and court costs. Appellant contends the Florida court is without subject matter jurisdiction or should not have exercised its jurisdiction because Virginia obtained jurisdiction over the custody dispute before proceedings were begun in Florida. We reverse, not for the reasons asserted by appellant, but to obtain the essential information needed to determine that the Virginia court is acting in conformity with the act.
The couple's two children, born in May 1979 and November 1980, lived in Gadsden County from birth until September 1981, when the family moved to Virginia. Although the couple never married, they had lived together for several years and it is undisputed that Hickey is the father of the children. On June 10, 1983, after living in Virginia approximately one and a half years, the mother returned the children to her home in Florida. She contends that the father ordered her and the children out of the Virginia home. The father contends the children were removed from Virginia by subterfuge  ostensibly for a vacation with their maternal grandparents in Florida.
In September 1983, the father initiated custody proceedings in the Juvenile and Domestic Relations District Court of Fairfax County, Virginia. The mother became aware of these proceedings and, on November 9, 1983, petitioned the Florida court for an adjudication of paternity, award of support, and custody of the children. On the same day, the mother made an appearance in the Virginia court by filing a motion to dismiss the father's petition for custody. The motion alleged that (1) the petition failed to state a cause of action and (2) Virginia was an inconvenient forum in which to litigate the custody issue since "the best interests of the children may best be determined by examining the circumstances as they now exist in Gadsden County, Florida, and such determination would best be made by a Florida court." The mother did not assert lack of jurisdiction in Virginia as a ground for dismissal.
Custody proceedings progressed simultaneously and independently in Florida and Virginia. The father did not appear in the Florida action to contest that proceeding. After submitting to the jurisdiction of the Virginia court, the mother did not further *1366 contest the father's claims in the Virginia action, nor did she timely inform the Florida court of the pendency of the Virginia proceedings. The Florida court entered a default against the father on December 12, 1983, and was apparently unaware of the Virginia proceedings until sometime after December 22, 1983, when the mother filed an affidavit pursuant to section 61.132, Florida Statutes (1983).
Section 61.132[2] contains explicit requirements:
(1) Every party in a custody proceeding, in his first pleading or in an affidavit attached to that pleading, shall give information under oath as to the child's present address, the places where the child has lived within the last 5 years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit, every party shall further declare under oath whether: (a) he has participated as a party or witness or in any other capacity in any other litigation concerning the custody of the same child in this or any other state; (b) he has information of any custody proceeding concerning the child pending in a court of this or any other state; and (c) he knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child.
Because the information is necessary for an adjudication of custody, this statute clearly requires each party to provide this information with the petition, whether contested or not, and with the answer thereto. The lower court has an affirmative duty, which was not performed in this case, to determine from the pleadings or examination of the parties whether it should order the joinder of additional parties and whether courts of another state should be contacted in accordance with the provisions of the act. §§ 61.1322[3] and 61.1324,[4] Fla. Stat. (1983).
In this instance, had the court below been informed of the Virginia proceeding when the petition for custody was filed, the court could have exercised its authority to order the father served with notice, as provided in section 61.1312,[5] requiring him to appear personally, and informing him that failure to appear might result in a decision adverse to him. § 61.1324, Fla. Stat. (1983).[6]
Once a Florida court learns of proceedings in another state involving custody of a child, it should adhere strictly to the provisions in section 61.1314, "to the end that the issues may be litigated in the more appropriate forum."[7] Among other things, sections 61.1314 and 20-129 of the Virginia Code require that a court: (1) not exercise jurisdiction if, "at the time of the filing of the petition, a proceeding concerning the custody of the child was pending in another state exercising jurisdiction substantially in conformity with this act," unless that out-of-state proceeding is stayed, or (2) stay the proceedings and communicate with the out-of-state court to determine which is the more appropriate forum to litigate the custody dispute. In deciding *1367 which state is the more appropriate forum, a court, either upon its own motion or the motion of a party, must determine whether it is an "inconvenient forum" as defined in sections 61.1316 and 20-130 of the Virginia Code. Communication between the courts involved, Florida and Virginia in this case, is essential to making this determination under the statutes. See Greene v. Greene, 432 So.2d 62 (Fla. 3d DCA 1983).[8]
The clerk of the circuit court is required by section 61.1334[9] to maintain a registry in which are filed certified copies of custody decrees of other states received for filing, communications as to the pendency of custody proceedings in other states or findings of an inconvenient forum by a court of another state, and any communication or document concerning custody proceedings in another state which may affect the jurisdiction of a court of this state or the disposition to be made by it in a custody proceeding. The record in this case does not reflect any entries in such a registry or any communication between the Florida and Virginia courts.
The Florida court's failure to require the petitioning mother to file the required affidavit, failure to properly serve the father with the required notice and process, and failure to communicate with the Virginia court once the Florida court had learned of the Virginia proceedings clearly indicate that the Florida court has not substantially complied with the UCCJA requirements. Nevertheless, on January 19, 1983, the Florida court, acting on the default entered against the father, rendered a final judgment declaring Florida to be the "home state" of the children, citing sections 61.1302-61.1348, inclusive; awarding custody of both children to the mother, with reasonable visitation rights to the father; requiring the father to pay future child support and child support arrearages, and to reimburse the mother for medical and hospital costs incurred incident to the birth of the children; and requiring the father to pay reasonable attorney's fees and costs of this suit.
On February 22, 1984, the Virginia court entered a final judgment awarding custody of the children to the father, noting that on November 23, 1983, approximately one month before the final custody hearing in the Florida court, the Virginia court had determined that it "has continuing jurisdiction and is the proper forum for this action." Section 20-129(C) of the Virginia Code (Cum.Supp. 1982) provides that if a Virginia court "is informed that a proceeding was commenced in another state after it assumed jurisdiction, it shall ... inform the other court to the end that the issues may be litigated in the most appropriate forum." The record does not reflect that the Virginia court communicated with the Florida court, as required by this section, prior to entering its final judgment, a fact which suggests that the Virginia court, like the Florida court, also may not be exercising jurisdiction substantially in conformity with the provisions of the UCCJA.
Addressing appellant's specific points on appeal, we now determine (1) whether Florida has subject matter jurisdiction of this suit, and (2) whether the Florida court erred in exercising jurisdiction.
Appellant contends that the Florida court does not have subject matter jurisdiction because the pending Virginia proceeding was filed first, citing Greene v. Greene, supra, and Mondy v. Mondy, 428 So.2d 235 (Fla. 1983). Although we disagree and hold that the Florida court does have subject matter jurisdiction, we do so for reasons other than those given by the lower court. *1368 Section 61.1308[10] sets forth four situations in which a Florida court has jurisdiction to make a custody determination. Only subsections (1)(a) and (1)(b) are applicable in this case. Subsection (1)(a) provides that the court has jurisdiction to make an initial determination or to modify a previous custody decree where the state is the "home state" of the child at the time proceedings are initiated. Jurisdiction on this basis continues for six months after a child has been removed from the "home state." "Home state" is defined in section 61.1306(5)[11] to mean:
[T]he state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent for at least 6 consecutive months or, in the case of a child less than 6 months old, the state in which the child lived from birth with any persons mentioned. Periods of temporary absence ... are counted as part of the 6-month or other period."
The lower court's determination that Florida is the "home state" of the parties' two children is erroneous. The children are older than six months and their nineteenmonth residence in Virginia cannot be considered, on the record before us, a period of "temporary absence." Custody proceedings were initiated in Virginia and Florida less than six months after the children were removed from Virginia. By statutory definition, the "home state" is Virginia, not Florida, and Virginia clearly has jurisdiction. See Bonis v. Bonis, 420 So.2d 104 (Fla. 3d DCA 1982). The six-month provision in section 61.1308(1)(a)[12] protects a parent such as Hickey, whose children have been removed from the home state by the other parent, by insuring that the stay-at-home parent may institute proceedings in his own state rather than being forced to pursue the fleeing parent and the child in another state.[13]
Subsection 61.1308(1)(b)[14] provides that Florida may assert jurisdiction if it is in the best interest of the child because the child and his parents have a "significant connection" with this state and there is available in the state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. Section 61.1308(1)(b) does not require that a child's only "significant connection" be with the state of Florida in order for jurisdiction of the Florida court to attach; it requires only that the child have a "significant connection" with this state. Hofer v. Agner, 373 So.2d 48, 51 (Fla. 1st DCA 1979). The record indicates that the children are living in Florida where they lived from birth until September 1981, in the geographical area where the mother was raised, and in close proximity to the maternal grandparents, who are contributing substantially to their financial and emotional support. These circumstances constitute a significant connection with Florida and are a sufficient predicate for Florida's assumption of subject matter jurisdiction under subsection (1)(b). See Reeve v. Reeve, 391 So.2d 789 (Fla. 1st DCA 1980). Cf., Greene v. Greene, supra.[15]
It is readily apparent, therefore, that concurrent jurisdiction exists in Florida and in Virginia under the alternative tests in section 61.1308(1)(a) and (1)(b), Florida Statutes (1983), and section 20-126, Virginia Code, as amended. Section 61.1304 states, "[T]he general purposes of this act are to ... avoid jurisdictional confrontation *1369 and conflict with courts of other states." While it is possible under the act for several states to have jurisdiction over a custody dispute, the basic premise is that only one court shall assume responsibility to determine custody. Mort v. Mort, 365 So.2d 194 (Fla. 4th DCA 1978). When the courts of more than one state have jurisdiction, priority in time of filing ordinarily controls which state shall proceed with the action so long as the court having such priority is "exercising jurisdiction substantially in conformity with this act." § 61.1314(1), Fla. Stat. (1983); Va.Code § 20-129 (Cum.Supp. 1982). See Bedingfield v. Bedingfield, 417 So.2d 1047 (Fla. 4th DCA 1982). Whether the Florida court erred in exercising jurisdiction in this case depends on whether the Virginia court is exercising its jurisdiction in conformity with the act.
The incomplete record on appeal is not sufficient for us to determine whether Virginia is exercising its jurisdiction "substantially in conformity" with the UCCJA. As previously stated, the omission of any communication between courts suggests the Virginia court is not doing so. But a final determination of this question must be made by the trial court on remand after it communicates with the Virginia court and acquires the pertinent information required by the applicable statutes discussed above. The trial court should consider, among other things, whether the Virginia court has adjudicated the issue of paternity and declared Hickey the father since that declaration is an essential predicate to recognizing Hickey's custodial rights as the father of these otherwise illegitimate children;[16] whether an appropriate home study has been made in Virginia and Florida pursuant to sections 61.134 and 61.1342, Florida Statutes (1983), and sections 20-142 and 20-143, Virginia Code (Cum.Supp. 1982);[17] and whether the judgment of the Virginia court purports to be based on competent, substantial evidence concerning the minor children's present and future care, protection, training, and personal relationships in both locations. §§ 61.1308 and 61.1316, Fla. Stat. (1983), and Va. Code §§ 20-126 and 20-130(C) (Cum.Supp. 1982).
The lack of communication between the Florida and Virginia courts, the lack of a competent record to support a determination that Virginia is exercising its jurisdiction in compliance with the act and is the more convenient forum, the lack of record support to determine that Florida is the inconvenient forum, and the fact that the Florida court has concurrent jurisdiction with Virginia distinguishes this case from Mondy v. Mondy, 428 So.2d 235, 238 (Fla. 1983). In Mondy, the issue was whether Idaho or Florida should exercise jurisdiction in a child custody dispute between the father and mother. The Florida trial court ordered its clerk to request Idaho to forward all documents and other pertinent information in the Idaho court file to the Florida court. The trial court also ordered a home study from the Florida Department of Health and Rehabilitative Services and its corresponding agency in Idaho. The nonresident father appealed an order finding jurisdiction in the Florida court and awarding custody to the mother. The Supreme Court reversed the order and held that the trial court should have refused to exercise jurisdiction because "the Idaho *1370 court had already followed the UCCJA in making its determination, presumably in the best interest of these children," (428 So.2d at 238), and, moreover, that the Florida court did not have jurisdiction under the significant connection test set out in section 61.1308(1)(b). We also note that the mother in Mondy filed a custody action in Florida after she had appeared in the Idaho court, suffered an adverse ruling, and then removed the children to Florida in violation of the Idaho court order. Nothing of that sort has occurred in this case.
If, on remand, the information obtained in compliance with this opinion supports a finding that Virginia is conforming to the provisions of the UCCJA and is the more appropriate forum under the statutory tests, the court below must decline to further exercise its jurisdiction and defer to the Virginia court in accordance with Mondy v. Mondy, supra.
Appellee argues that the judgment below should be affirmed because the UCCJA provisions are more in the nature of venue provisions than jurisdictional requirements, citing Bedingfield v. Bedingfield, supra, and urges that the father has waived his right to raise venue objections in Florida due to his failure to appear in the Florida action. We reject this argument for at least two reasons. First, the petitioning mother did not timely advise the court below of the pending Virginia action before the default was taken against the father, and the court did not perform its affirmative duty to require compliance with the provisions of the UCCJA as described herein. Second, this record does not contain proof that the husband was properly served with process and notice to appear in the Florida case in strict compliance with sections 61.131, .1312, and .1324, Florida Statutes (1983). Since it does not appear that the father was made a party in compliance with these statutory requirements, he was under no obligation to appear and defend the Florida action and, therefore, could not be found to have waived the right to make this objection.
This case deals primarily with an initial custody dispute between parents, and the parents' respective rights must obviously be recognized. It must also be kept in mind, however, that the court's paramount concern is the best interests of the children  not just the relative rights of the natural parents to custody. As the commissioners' note to section 3 of the uniform act points out (section 61.1304), "the [best] interests of the children are served when the forum has optimum access to relevant information about the child and family." Uniform Child Custody Jurisdiction Act, § 3, Commissioners' Note, 9 U.L.A. at 124 (1979).
The final judgment is reversed, and the case is remanded for further proceedings on an expedited basis. The court below may continue the existing custody arrangements in effect for a reasonable time to acquire the information from the Virginia court necessary to make the determinations required by this opinion.
REVERSED and REMANDED.
ERVIN, C.J., and MILLS, J., concur.
NOTES
[1] The UCCJA became effective in Florida on October 1, 1977, and is found in sections 61.1302 through 61.1348, Florida Statutes (1983). The act became effective in Virginia on January 1, 1980, and is found in sections 20-125 through 20-146, Virginia Code (Cum.Supp. 1982).
[2] Provisions corresponding to section 61.132 are found in sections 20-132, Virginia Code (Cum. Supp. 1982).
[3] Provisions corresponding to section 61.1322 are found in section 20-133, Virginia Code (Cum.Supp. 1982).
[4] Provisions corresponding to section 61.1324 are found in section 20-134, Virginia Code (Cum.Supp. 1982).
[5] Provisions substantially similar to section 61.1312 are found in section 20-128, Virginia Code (Cum.Supp. 1982).
[6] Provisions substantially similar to section 61.1324 are found in section 20-134, Virginia Code (Cum.Supp. 1982). Section 61.1324(3), Florida Statutes (1983), and section 20-134(C), Virginia Code (Cum.Supp. 1982), provide authority for allocating expenses of travel to the court that may be close to one of the parties and distant from another. The court may equalize the expense where appropriate under the circumstances. Uniform Child Custody Jurisdiction Act, § 11, Commissioners' Note, 9 U.L.A., at 148 (1979).
[7] Similar provisions to section 61.1314 are found in section 20-129, Virginia Code (Cum. Supp. 1982).
[8] The Greene case involved a jurisdictional dispute between a Florida and a Virginia court; the Virginia court, in obvious compliance with the UCJJA, directed its clerk to communicate with the circuit court in Florida, confirm the Virginia court's jurisdiction over the custody issue, and "respectfully request that the Florida court refrain from exercising jurisdiction over the same cause." 432 So.2d at 63.
[9] Provisions corresponding to section 61.1334 are found in section 20-139, Virginia Code (Cum.Supp. 1982).
[10] Section 20-126, Virginia Code (Cum.Supp. 1982), is comparable to section 61.1308.
[11] Section 20-125(5), Virginia Code (Cum.Supp. 1982), is comparable to section 61.1306(5).
[12] Section 20-126(1), Virginia Code (Cum.Supp. 1982), is comparable to section 61.1308(1)(a).
[13] Frumkes & Elser, "Uniform Child Custody Jurisdiction, The Florida Experience," Florida Bar Journal, December 1979, at 686.
[14] Section 20-126(2), Virginia Code (Cum.Supp. 1982), is comparable to section 61.1308(1)(b).
[15] Appellant's reliance on Greene v. Greene, supra, for a contrary conclusion is misplaced. The court in Greene found that Florida lacked subject matter jurisdiction because "there is a glaring dearth of evidence that the child and the parents have any significant connection with the state." 432 So.2d at 64.
[16] If the Virginia court has not adjudicated the paternity issue, that court may well lack jurisdiction to award custody of the children to the father because his status as father has not been legally established, except by the Florida judgment appealed in this case. This issue has not been argued, and we cannot reach and decide it on the record before us.
[17] Section 61.134, Florida Statutes (1983), provides:

Hearings and studies in another state; orders to appear. (1) A court of this state may request the appropriate court of another state to hold a hearing to adduce evidence, to order a party to produce or give evidence under the procedures of that state, or to have social studies made with respect to the custody of a child involved in proceedings pending in the court of this state; and to forward to the court of this state certified copies of the transcript of the record of the hearing, the evidence otherwise adduced, or any social studies prepared in compliance with the request.
Section 20-143 of the Virginia Code, as amended, contains similar provisions.