Kuntz, J.
The mother appeals the court’s denial of a verified petition for emergency child pick-up and return to the State of Florida. We treat this as a petition for a writ of certiorari, grant the petition, and quash the court’s order.

Background

Generally, the facts are undisputed. The child has lived in Florida since birth and has been in the custody of the mother his entire life. The mother dropped the child off at the child’s paternal great-grandmother’s in April 2016, with an agreement that she would pick up the child on June 17, 2016. On the day before the scheduled *66 pickup, the father picked up the child and brought the child to his cousin in Georgia. On July 1, 2016, the father’s cousin, the respondent in this proceeding, filed a dependency action in the State of Georgia. Two weeks after the initiation of the- Georgia proceeding, the mother filed a Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) affidavit and the verified petition at issue in this appeal.
On July 28, 2016, the court entered the order denying the petition. The court’s order stated that it had conferred with “the Honorable Kristy Treadaway, presiding judge in the aforementioned Georgia juvenile proceeding, who advised the pending juvenile action is in .the nature of a dependency case, such action having been filed July 1, 2016.” The order concluded by stating “[t]hat the Verified Petition for Emergency Child PickUp Order is DENIED, This Court reserves concurrent jurisdiction of this cause for all legal and proper-purposes.” This petition follows. '

Analysis

The mother timely appealed the court’s order; however, we treat the appeal as a petition for writ of certiorari. Hirvonen v. Filsinger, 866 So.2d 1273, 1275 (Fla. 4th DCA 2004) (denying petition after concluding that the Florida court properly exercised jurisdiction under the UCCJEA); Karam v. Karam, 6 So.3d 87, 90 (Fla. 3d DCA 2009) (granting petition for certiorari and quashing order).
The UCCJEA controls inter-state custody disputes. The UCCJEA is substantially similar in both Florida and Georgia and provides that jurisdiction to determine custody matters is generally limited to the “home state” of the child, § 61.514, Fla. Stat. (2016); Ga. Code § 19-9-61 (2016), defined as “the state in which a child lived with a parent or a person acting as, a parent for at least 6 consecutive months immediately before the commencement of a' child custody proceeding.” § 61.503(7), Fla. Stat. (2016); Ga. Code § 19-9-41(7) (2016). The six-month provision “protects a parent such as [the mother here], whose children have been removed from the home state .'.., by insuring that the stay-at-home parent may institute proceedings in his own state rather than being forced to pursue the fleeing parent and the child in another state.” Hickey v. Baxter, 461 So.2d 1364, 1368 (Fla. 1st DCA 1984).
In this case, there is no dispute that the “home state” is Florida. The child has lived in Florida since birth and the record does not provide an indication of any connection to Georgia until the child was taken there by a person other than his custodial parent. Further, in her answer brief, the respondent states that she “filed a Private Dependency Petition in Georgia based on Florida statutes § 61.517(1) and Georgia Code § 19-9-64.” Those two statutory provisions provide “temporary emergency jurisdiction” to the courts in each state, and are only applicable if the state where jurisdiction is invoked is not the home state.
The temporary emergency jurisdiction is applicable where “the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child," or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.” § 61.517(1), Fla. Stat. (2016); Ga. Code § 19-9-64 (2016). Similar to Florida, the Georgia Supreme Court has explained that this provision “authorizes temporary emergency jurisdiction only ‘if the child is present in this state and the chilcl has been abandoned or it is necessary in an emergency to protect the child because the child or a sibling or parent of the child is subjected to or threatened with mistreatment or abuse.’ ” Jackson v. Sanomi, 292 Ga. 888, 742 S.E.2d 717, 718 (2013) (quoting Ga. Code § 19-9-64 (2012)).
We have also explained; that the UC-CJEA provides that “a court with jurisdic *67 tion over a custody cause may decline to exercise that jurisdiction if the court ‘determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.’ ” K.I. v. Dep’t of Children & Families, 70 So.3d 749, 753 (Fla. 4th DCA 2011) (quoting § 61.520(1), Fla. Stat. (2010)). However, an order declining to exercise jurisdiction requires the court to .follow specific statutory' procedures and consider^ ations. Id..
One of the statutory considerations is that when a court of this state decides to communicate ■ with the court of another state, “[t]he court shall allow the parties to participate in the communication. If the parties elect to participate in the communication, they must be given the opportunity to present facts and legal • arguments before a decision on jurisdiction is made.” § ■61.511(2), Fla. Stat. (2016). Further, the statute states that “a record must be made of a communication under this section. The parties must be informed promptly .of the communication and granted access to the record.” § 61.511(4), Fla. Stat. (2Q16). Finally, the statute states that the “term ‘record’ means a form of information, including, but not limited to, an electronic recording or transcription by a court reporter which creates a verbatim memorial-ization of any communication between, two or, more individuals or entities.” § 61.511(5), Fla. Stat. (2016).
In this case, thé mother filed a'-motion specifically requesting that the court communicate with the Georgia court. In.that motion, she did not ask to be present during the communication but requested “that there be a written or electronic recording of the communication between courts.” Based upon the record before us, the court did not keep a record as requested by the mother and mandated by the statute.
We have previously held that the failure to allow a party to participate in the communication with a court in another state .requires reversal. K.I., 70 So.3d at 753-754; Poliandro v. Springer, 899 So.2d 441, 444 (Fla. 4th DCA 2005). The failure to maintain a record of communications with the .courts of a .sister state, as mandated by section. 61.511, Florida Statutes (2016), requires the same result.

Conclusion

We grant the petition and quash the order. We remand to allow the Florida court to communicate with' the Georgia court after giving notice to the parties .and to keep a récord of the communication in the manner required by the statute.' Further, if the court determines that it should decline to exercise its home state jurisdiction, the court’s order must contain factual findings that satisfy the requirements of the statute. K.I., 70 So.3d at 753-54; Poliandro, 899 So.2d at 444.
, ‘ Petition for writ of certiorari granted; order quashed.
Ciklin, C.J., and May, J., concur.