574 So.2d 205 (1991)
Tamara Lynn WALT, Appellant,
v.
James Lee WALT, Appellee.
No. 89-3026.
District Court of Appeal of Florida, First District.
January 23, 1991.
*207 Walter R. Stedeford, Jacksonville, for appellant.
Mark M. Green of Funk & Green, Jacksonville, for appellee.
*208 ZEHMER, Judge.
Tamara Lynn Walt appeals an order issuing a writ of habeas corpus for the return of her son, Christopher Lee Walt, to his father, James Lee Walt. The order is based on a Mississippi court judgment awarding the father custody of the child under the Uniform Child Custody Jurisdiction Act. We reverse, holding the trial court erred in summarily accepting the validity of the Mississippi judgment in view of the indications that the Mississippi court failed to exercise jurisdiction to enter the custody decree in accordance with the requirements of the UCCJA.

I.
Christoper Walt was born in Duval County, Florida, on November 3, 1987. He lived there with his parents until January 9, 1989, when the family moved to Mississippi where his father had located employment. Five and one-half months after moving to Mississippi, the husband and wife separated, and the mother and child moved back to Duval County, as the mother had lived all her life in the State of Florida. The husband consented to this move and paid all of the financial expenses associated with it. Several of his relatives assisted the mother and child in moving back to Florida. On July 14, 1989, three weeks after the mother and child left Mississippi, the father filed a complaint for divorce in a Mississippi court.[1] A copy of the complaint was sent to the wife (whether this was done in strict accordance with the Mississippi law governing out-of-state service is not clear from the record before us). The mother did not respond to the complaint, and did not appear at the divorce hearing in Mississippi held on August 29, 1989. Under date of September 1, 1989, the Mississippi court entered its final judgment granting the husband a divorce and awarding custody of the child to him. This judgment recited only the conclusion that the court had jurisdiction to determine the child's custody pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), section 93-23-7, Mississippi Code (1972).[2] The judgment made no reference to the child's residence with his mother in Florida. It contained no finding that it was in the best interests of the child that the Mississippi court assume jurisdiction to determine custody of the child. It did not recite any findings or conclusions regarding the basis of the court's exercise of jurisdiction to determine child custody under the UCCJA.
The father thereafter initiated this action on October 5, 1989, by filing a three-count complaint in the Duval County Circuit Court. The first count requested the court to establish the Mississippi judgment as a judgment of the Florida court. The second count, entitled "Motion for Enforcement of Final Judgment of Divorce," requested the court to order "the immediate return of the parties' minor child to the plaintiff, holding the defendant in contempt of this Court," and prayed for other general relief. The third count, entitled "Petition for Writ of Habeas Corpus," requested the court to grant a writ ordering the defendant to present the child before the court at a specified date and time. No responsive pleading by the mother appears in the record filed before us by the parties.[3] On November 8, 1989, the Florida court conducted an evidentiary hearing on the "Petition for Habeas Corpus" only; however, no writ or order requiring a response *209 had been issued by the court and served on the mother in accordance with rule 1.630, Florida Rules of Civil Procedure. See also ch. 79, Fla. Stat. (1989).[4] The record contains no return or response. Since the return or response contemplated by the rule, statute, and the petition frames the issues, Matera v. Buchanan, 192 So.2d 18, 20 (Fla. 3d DCA 1966), it is not clear, in the absence of a return or response, what precise issues were to be tried at the hearing. In any event, at the hearing the mother agreed to proceed with the taking of testimony even though the writ had not issued, it apparently being acceptable to opposing counsel and the court for her to raise her objections to the petition orally during the proceeding. The father's testimony, pursuant to questioning by his counsel, made it clear that the purpose of this particular hearing was only to obtain temporary custody of his child based upon the prima facie authority of the Mississippi judgment. The parties apparently contemplated further proceedings to make that judgment a Florida judgment and give the father permanent custody of his son through enforcement thereof.
During the hearing, the mother contested the Mississippi court's exercise of jurisdiction to award custody to the father, urging that court's noncompliance with jurisdictional requirements of the UCCJA in at least two respects: (1) that the father failed to include in the initial pleading, or an affidavit attached thereto, information as to the child's residence required by section 93-23-17(1) of the Mississippi Code; and (2) that the Mississippi court failed to make the essential finding that it was in the best interest of the child for that court to exercise jurisdiction under subsections 93-23-5(1)(b) or (d) of the Mississippi Code, these being the only possible statutory bases for that court to exercise jurisdiction in this case.
Rejecting these contentions, the circuit court, at the conclusion of the hearing held on November 8, 1989, issued the following: (1) a "Writ of Habeas Corpus Nunc Pro Tunc" requiring the mother "to produce the body of the minor child" before the court on November 8, 1989, and "show cause, if any you can, by what legal authority you hold the minor child ... in custody and why he should not be immediately released to Plaintiff"; and (2) an order entitled "Order Issuing Writ of Habeas Corpus and Return of Minor Child," reciting that the cause was "heard on the plaintiff's Petition for Writ of Habeas Corpus and Return of Minor Child." In the order issuing the writ of habeas corpus, the court made several "findings of fact," ruled that the Mississippi court judgment was valid, and directed that the mother return the child to the father the next day, November 9. The mother immediately appealed this order on November 9 and obtained a stay of enforcement of the order from the circuit court pending appellate review.

II.
Both Florida and Mississippi have adopted the UCCJA, so the law applicable to resolve which of the two jurisdictions may exercise jurisdiction to determine child custody derives from that uniform statute. The Florida court's recognition and enforcement of an out-of-state court decree is governed by the provisions in section 61.1328, Florida Statutes (1989).[5] Enforcement under this provision, however, "is subject to a finding that the other state had jurisdiction to enter the original decree." In re Adoption of C.L.W., 467 So.2d 1106, 1109 (Fla. 2d DCA 1985); Howard v. Howard, 378 So.2d 1329, 1330 (Fla. 5th DCA *210 1980). When a foreign state decree or judgment is sought to be enforced in Florida and a party contests the foreign court's exercise of jurisdiction, the Florida court is required to hear evidence and determine whether the foreign court jurisdiction was exercised in accordance with the UCCJA. If the facts and circumstances proven by the evidence show that the foreign court did not satisfy the jurisdictional requirements of the UCCJA, or show that the foreign court failed to assume jurisdiction in accordance with the act, the Florida court cannot enforce the judgment; however, the Florida court may, and in some circumstances should, determine the custody issue so long as its own exercise of jurisdiction meets the UCCJA's jurisdictional requirements. In re Adoption of C.L.W., supra; Howard, supra. See also Hernandez v. Hernandez, 406 So.2d 513 (Fla. 3d DCA 1981).
Appellant's points on appeal are predicated upon provisions of the UCCJA. However, before discussing them, we first address the impact of the father's choice to proceed in accordance with the law applicable to a habeas corpus proceeding. Initially, we point out that habeas corpus is by definition an independent proceeding to be used when no other appropriate proceeding for obtaining custody is pending or available. While its use as a remedy in this case was not challenged by appellant in the court below, ordinarily habeas corpus is not resorted to where there is another available and adequate remedy, such as the provisions of the UCCJA as adopted in Florida, e.g., §§ 61.1328, 61.1332, 61.1346, Fla. Stat. (1989), which provide an adequate remedy to a non-resident parent seeking to enforce a valid out-of-state custody decree. See Trujillo v. Trujillo, 378 So.2d 812, 815 n. 18 (Fla. 3d DCA 1979). Habeas corpus is recognized to be an appropriate remedy for enforcement of a foreign child custody decree, however, so the plaintiff's use of the remedy in this case is not, per se, grounds for reversal. See 28 Fla.Jur.2d, Habeas Corpus § 65 (1981). However, the use of habeas corpus must at least accord with the applicable provisions of the UCCJA. Trujillo.
The nature of habeas corpus was concisely described by the supreme court in Crane v. Hayes, 253 So.2d 435 (Fla. 1971):
As a general rule, a habeas corpus proceeding is an independent action, legal and civil in nature, designed to secure prompt determination as to the legality of restraint in some form... . When child custody is involved, however, a habeas corpus action takes on the nature of an equitable proceeding, and the trial judge has the duty and authority to enter orders which will best conserve the welfare of the child, subordinating if necessary the legal rights of the parents... .
There is no question but that habeas corpus is a proper proceeding to obtain custody of a child wrongfully withheld. However, this does not mean that a habeas corpus retains its form as a special proceeding of high priority and limited scope, designed to secure summary determination of rights and needs relating to restraint. Upon entry of a judgment settling the question, jurisdiction terminates, and the judgment becomes subject to timely review just as any other final judgment.
... An order of a court in a sister state granting temporary custody is not res judicata, and a Florida court has a duty on petition for writ of habeas corpus to determine the child's best interest.... An order by a foreign court which is without jurisdiction is not binding.
253 So.2d at 439-40 (citations omitted). Being an original proceeding, disposition of the petition ordering a change of custody, as in the instant case, is in the nature of a final order.
Although enforcement of a foreign custody decree remains subject to the requirements of the UCCJA, the following principles govern the use of habeas corpus as the enforcement remedy:
A custody award of another state will be enforced in Florida by habeas corpus absent any showing of legal reason why the court should not recognize and enforce *211 the order of the court of the sister state. However, the trial court is not bound by the prior foreign decree to the extent that the court can refuse to determine the issue of who should have custody of the child. While the trial court may properly consider the foreign decree as a factor in deciding the custody issue, the trial court is not bound by the full faith and credit clause to automatically enforce the foreign decree. Under the comity principle the trial court may, in its discretion, enforce the foreign decree, but only after that court has determined whether it is in the best interests of the child to do so.
28 Fla.Jur.2d, Habeas Corpus § 65, p. 496 (1981). In determining the right to the custody of a child by habeas corpus, the welfare of the child is a controlling factor that must be considered by the court. 28 Fla.Jur.2d, Habeas Corpus § 114 (1981). Therefore, when using the writ to enforce a custody decree, the Florida court must make a finding that the requested change of custody is in the best interests of the child at the time the matter comes on for hearing before that court. See generally 28 Fla.Jur.2d, Habeas Corpus § 67. Where the order appealed is unsupported by the legal effect of the evidence, it becomes the appellate court's duty to reverse. Matera v. Buchanan, 192 So.2d 18 (Fla. 3d DCA 1966).
With these considerations in mind, we now address the appellant's specific points on appeal.

III.
In her first point, the mother argues that the Mississippi court could not exercise jurisdiction to determine the child's custody because the father failed to comply with the requirements of the UCCJA, section 93-23-17(1), Mississippi Code Annotated (1989), when he filed his suit.[6] That section states:
(1) Every party in a custody proceeding in his first pleading or in an affidavit attached to that pleading shall give information under oath as to the child's present address, the places where the child has lived within the last five (5) years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit every party shall further declare under oath whether:
(a) He has participated (as a party, witness or in any other capacity), in any other litigation concerning the custody of the same child in this or any other state;
(b) He has information of any custody proceeding concerning the child pending in a court of this or any other state; and
(c) He knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child.
(Emphasis added). An important purpose underlying the requirement that this information be included in or filed with the first pleading is to insure that the information is made known not only to the court but also to the adverse party by timely service, so that both can determine the basis for the court's exercise of jurisdiction of the child custody issue.[7] Thus, a party receiving a pleading that fails to conform with the statute may challenge the court's exercise of jurisdiction for failure of the plaintiff to comply with this requirement.
It is undisputed that the father failed to include the information so required in his first pleading or in an affidavit attached to that pleading. The mother argues that this failure to timely file the information with the initial complaint prevented the Mississippi court from exercising jurisdiction to *212 determine custody of the parties' child. The father testified before the Florida court, however, that he executed and filed an affidavit on the day he testified at the final hearing before the Mississippi court, and that this affidavit set forth the places where the child had lived as required by section 93-23-17. The question, then, is whether filing the information at the final hearing was timely enough to validate the Mississippi court's exercise of jurisdiction in the face of the initial deficiency.
There is no question that an unexcused failure to file the information required by section 61.132 leaves the court without jurisdiction to enter a valid child custody order under the UCCJA. Had the father in the instant case completely failed to file the information required by section 93-23-17 (Fla. Stat. 61.132), Florida cases construing the UCCJA indicate that the court could not have validly exercised jurisdiction in conformance with the act. See Perez v. Perez, 519 So.2d 1104 (Fla. 3d DCA 1988); Mouzon v. Mouzon, 458 So.2d 381 (Fla. 5th DCA 1984). In Perez, the third district gave as one of its reasons for reversing a judgment of dissolution that the "portion of the judgment granting `custody' of the parties' child was plainly erroneous ... because the complaint did not comply with section 61.1308 or 61.132, Florida Statutes (1985)...." In Mouzon, the fifth district stated that a Florida court did not have jurisdiction because "neither ... the complaint nor any affidavit attached to it show any of the jurisdictional requirements of section 61.132 or 61.1308, Florida Statutes (1981) so as to vest the court with custody jurisdiction. ..." 458 So.2d at 383. Judge Cowart's concurring opinion in Mouzon correctly explained that the trial court did not acquire jurisdiction to make the child custody determination under the UCCJA "because of inadequate compliance with the requirements of section 61.132, Florida Statutes." 458 So.2d at 389.
The husband relies on In the Interest of T.L. v. State, Department of HRS, 392 So.2d 288 (Fla. 5th DCA 1980), as supporting his argument that failure to timely file the required information did not preclude the Mississippi court from acquiring jurisdiction. In that case, HRS instituted dependency proceedings but failed to timely file the information required by section 61.132, Florida Statutes (1979). The fifth district held that section 61.1308 sets out the UCCJA's jurisdictional prerequisites, and that while the failure of the court to require strict compliance with section 61.132 was error, that error did not necessarily deprive the court of jurisdiction because "there was other competent evidence apart from this filing for the court to determine that it had jurisdiction... ." 392 So.2d at 290. Significant distinctions between this case and In the Interest of T.L. preclude the latter from being dispositive of the issue presented to us, however. In the Interest of T.L. was a Florida dependency case involving no interstate custody dispute between the two parents. The jurisdictional concerns of the local court raised in intrastate dependency cases are quite limited, whereas jurisdictional questions in interstate custody cases depend upon the satisfaction of several specific factors. See § 61.1308, Fla. Stat. (1989). Not surprisingly, in In the Interest of T.L. the trial court had competent evidence before it without the information required by section 61.132 from which it could determine that it had jurisdiction. In the instant case, the Mississippi court could not properly determine whether it could exercise jurisdiction to determine the child custody issue without being provided the information on the child's residency as required by this provision of the UCCJA.
Closer to the point is Hickey v. Baxter, 461 So.2d 1364 (Fla. 1st DCA 1984), the only Florida case of which we are aware that deals with a parent's untimely filing of the information required by section 61.132 in an interstate child custody dispute. In Hickey, the husband filed a petition for custody in Virginia and the wife subsequently filed a petition for custody in Florida. The two custody proceedings progressed simultaneously and independently in each state, and the Florida court eventually entered a default judgment against the husband. After the default was entered, *213 the wife filed an affidavit pursuant to section 61.132 apprising the Florida court of the Virginia proceedings. The husband appealed the default judgment, arguing that Florida did not have subject matter jurisdiction and, if it did, that it erred in exercising jurisdiction. This court held that the Florida and Virginia courts had concurrent jurisdiction and remanded for further proceedings in which the Florida court was to determine whether the Virginia court was exercising its jurisdiction in compliance with the UCCJA and was the more convenient forum; if it so found, the Florida court was directed to decline to exercise its jurisdiction in the case. This court also observed that the Florida court itself was not in substantial compliance with the UCCJA requirements in that it had failed to require the wife to file the affidavit required by section 61.132 with her initial pleading. 461 So.2d at 1367.
Two out-of-state cases applying the UCCJA also provide some guidance, although not the answer to the specific issue before us. The first case, Breaux v. Mays, 746 P.2d 708 (Okla. Ct. App. 1987), overruled on other grounds by G.S. v. Ewing, 786 P.2d 65 (Okla. 1990), stated that a petitioning party's failure to initially provide the trial court with the information required by section 9 of the UCCJA, either by pleading or affidavit, was not jurisdictional but rather was merely procedural, and that the initial failure to provide the information could be cured by amendment. The second case, Cook v. Court of Common Pleas of Marion County, 28 Ohio App.3d 82, 502 N.E.2d 245 (1986), stated that filing the UCCJA affidavit is a jurisdictional requirement in a child custody proceeding, but the requirement that it be filed with the complaint is considered directory, not mandatory.
It may be concluded from the above cases that timely compliance with this UCCJA provision upon filing the initial complaint is essential to facilitate a proper determination of jurisdiction, and that failure to do so is clear error that deprives the court of the right to exercise jurisdiction; but failure to timely file the required information will not necessarily impair the court's exercise of jurisdiction if appropriately cured by a timely amendment. Thus, a court may nevertheless validly exercise its jurisdiction if the omitted information is timely supplied by amendment of the pleading, or by affidavit annexed to a motion to amend, provided of course that the information so supplied satisfies the requirements of section 61.1308 (or section 93-23-17, its counterpart under the Mississippi code in this instance). It is clear that a principal purpose of requiring that this information be furnished with the initial pleading is to insure that it is timely furnished to the opposing party well in advance of hearing, although a court should accord substantial liberality in granting leave to amend (with timely service on the opposing party) to correct the error of omission. Service upon the defending party is essential because that party might well determine to forego making an appearance in an inconvenient forum in a foreign state court when this jurisdictional requirement has not been satisfied by the plaintiff, since the defending party has the well-established right to contest this jurisdictional deficiency at a later time if the plaintiff should attempt to enforce a custody decree so obtained in the defendant party's state of residence. Thus, failure to effect timely service upon the adverse party reasonably in advance of a final hearing may well entrap the defendant into not appearing at the hearing and an attempt to correct this jurisdictional deficiency by filing an amendment or affidavit at trial without having effected timely service upon the opposing party reasonably well in advance thereof cannot serve to cure this jurisdictional defect.
Here, it appears from the record that the husband's affidavit was not lawfully served upon the mother in advance of trial so as to cure this jurisdictional deficiency.[8] In view of the father's failure to *214 file the affidavit until the evidentiary hearing held three days before entry of the final judgment, and in view of the Mississippi judgment's silence as to the child's residence in Florida and the reason for the court's assumption of jurisdiction, there is considerable question as to whether the Mississippi court did in fact consider and rule on this issue in accordance with the UCCJA requirements.[9] The Mississippi court decree did not expressly address the legal effect of the child's residence with his mother in Florida and absence from Mississippi when the suit was filed, and why it was in the best interest of the child for the Mississippi court to assume jurisdiction. Nor did the Mississippi court appear to consider whether a Florida court might more appropriately assume jurisdiction under the UCCJA to determine custody because it would be in the best interest of the child in view of the child's physical residence in Florida and his prior contacts with the state. Yet, it is clearly shown in this record that a Florida court could have properly assumed to exercise jurisdiction on this basis. See Baird v. Baird, 374 So.2d 60 (Fla. 3d DCA 1979).
We hold, based on these deficiencies in the Mississippi proceeding as demonstrated on this record, that the Florida court erred in concluding that the Mississippi court had exercised its jurisdiction in accordance with the requirements of applicable UCCJA provisions and issuing a writ of habeas corpus to enforce that judgment as valid and binding on the mother. It was error to grant the writ of habeas corpus and order the child immediately delivered by the mother to the father solely on the authority of that judgment.

IV.
The mother's second point argues that the Mississippi court did not have jurisdiction to determine the custody of the child because that state did not satisfy any of the jurisdictional prerequisites set forth in section 93-23-5, Mississippi Code.[10] This section states:
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one (1) contestant, have a significant connection with the state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or
(c) The child is physically present in this state and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(d) (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b) or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more *215 appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
(2) Except under paragraphs (c) and (d) of subsection (1) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.
The Mississippi judgment does not indicate which, if any, lettered subsection of paragraph (1) served as the basis for the Mississippi court's exercise of jurisdiction. In addition to the matter recited in the judgment (see footnote 9, supra), the Mississippi judgment merely recites that the "Court finds that the Plaintiff, James Lee Walt, is a proper person to have the care, control and custody of said minor child and that he has a suitable place and arrangements for his care." A finding that the father is a proper person to have custody is not the equivalent of a finding that it is in the best interest of the child that he do so to the exclusion of the mother.
The appealed Florida order likewise contains no indication of the subsection on which it found the Mississippi court could have exercised jurisdiction. However, at the hearing before the Florida court, the following colloquy took place:
THE COURT: ... I am making a finding, irreversibly, that in [sic] September 1, 1989 when the final judgment was entered in Mississippi this child had no home state. Neither Florida nor Mississippi was the home state of this child. Therefore, that throws us into the provision in 61.1308. It throws us, in my view, within (d).
MR. STEDEFORD [Wife's attorney]: (d)?
THE COURT: (d).
MR. GREEN [Husband's attorney]: Not (b)?
THE COURT: Where it says that Mississippi  assuming that we were Mississippi  that Mississippi could have entered its initial decree if it appears true. And it is in the best interest of the child that Mississippi assume jurisdiction.
MR. GREEN: Okay.
THE COURT: Now I am assuming at this point, number one, we do know that neither Florida nor Mississippi had jurisdiction. And then I am making the assumption that the Court in Mississippi assumed jurisdiction because the judge there felt it was in the best interest of the child that Mississippi assumed jurisdiction, and that is what he did.
MR. GREEN: Are you ruling out (b) altogether?
THE COURT: I am ruling out 
MR. GREEN: I mean, I am wondering how the court could rule out (b) altogether. I understand your reasoning for (d) but I am wondering how you can rule out (b) altogether.
THE COURT: I think that I would not exclude (b). I think it falls clearly under (d).

* * * * * *
THE COURT: It can only be (b) or (d)... . I am saying there is [sic] at least two provisions and probably one in particular that that judge out there in Mississipppi relied on to exercise jurisdiction.
(Emphasis added).
The mother specifically takes issue with the Florida court's ruling that the Mississippi court could properly have assumed jurisdiction under either 93-23-5(1)(b) or (d). The father's brief does not directly respond; it only skirts this issue by arguing merely that "the Florida court was duty bound to enforce the child custody order entered by the Mississippi court." But whether the Mississippi court should or should not have assumed jurisdiction to enter the child custody order cannot be so simplistically determined. Subject matter jurisdiction, always essential to the validity of a court's action, can be challenged at any time, and a lack of subject matter jurisdiction should be recognized by a court even if unchallenged; when a party or a *216 court's own examination of a case suggests a lack of jurisdiction, the court is duty bound to consider such issue. 13 Fla. Jur.2d, Courts and Judges, §§ 28, at p. 107 (1979). Contrary to the father's argument, it is appropriate for the Florida court to look behind the Mississippi judgment and determine whether the Mississippi court exercised jurisdiction in strict accordance with the requirements of the UCCJA.
We agree that neither Mississippi nor Florida could be treated as the child's "home state" under the applicable statutory provisions.[11] The child was born and had lived in Florida for 14 months before the move to Mississippi, where he stayed with both parents less than six months. When the Mississippi action was filed, the child had returned to Duval County, Florida, where he was living with his mother. Although Florida was the child's home state when the parties moved to Mississippi, there is no suggestion in the evidence that such move was intended to be a mere temporary absence from the state of Florida. On the contrary, it appears that a permanent change of residence was contemplated by the parties, and under the literal wording of the statutory provisions, Florida ceased being the child's home state when that permanent change of residence occurred. In the absence of either state being the child's home state, the Mississippi court could only have assumed jurisdiction under subsections 93-23-5(1)(b) or (d) of the Mississippi Code.[12] Both of these lettered subsections require a finding by the court that it is in the best interest of the child that the court assume such jurisdiction.
We conclude on this record that the Mississippi court could not have validly assumed jurisdiction pursuant to subsection 93-23-5(1)(d) of the Mississippi Code. The physical presence of the child in Florida by reason of his residence with the mother with his father's consent, and the mother's longstanding relationship with Florida where she had always lived, clearly support the exercise of jurisdiction by a Florida court. See Baird v. Baird, supra. It follows that the Mississippi court could not have validly exercised jurisdiction under subsection 93-23-5(1)(d) of the Mississippi Code, because there was, in fact, another state that could have exercised valid jurisdiction; and on this record, the Mississippi court did not have notice that such state had declined to exercise that jurisdiction. It was incumbent on the Florida court, therefore, to determine whether the facts and circumstances surrounding the child's current residency with his mother in Florida indicated that it was in the best interest of the child for a Florida court to exercise jurisdiction over custody issues pursuant to that subsection.[13]
*217 Since the Mississippi court could not have validly assumed jurisdiction under subsection (1)(d) under the circumstances shown on this record, the only statutory jurisdictional alternative was subsection 93-23-5(1)(b). The Mississippi judgment does not contain any findings of fact establishing a jurisdictional predicate under that subsection. Nor does the record contain evidence demonstrating, for purposes of summary disposition, that the child had the requisite "significant connection" with Mississippi, that there was available in Mississippi substantial evidence concerning the child's present or future care, protection, training, or personal relationships, and thus that it was in the best interest of the child that the Mississippi court assume jurisdiction to the exclusion of Florida courts.
As this matter comes to us for review of an order granting a writ of habeas corpus requiring the mother to immediately deliver the child to the father prior to final hearing and entry of final judgment on the issues raised by the parties, the writ could issue only if the father's right of custody was clearly established and the circuit court found that it was in the best interest of the child that such temporary custody be changed immediately.[14] Yet, when requested by the mother's counsel, the court declined to make any determination regarding whether a change of custody was in the child's best interest, stating that such a finding was for the Mississippi court to make and that the Florida court would not go behind the Mississippi judgment to determine that matter. In this respect, the circuit court did not conform to the law governing the use of habeas corpus to enforce custody decrees, as previously discussed. This ruling likewise constituted a departure from the requirements of the UCCJA in that the mother was entitled to contest whether the Mississippi court properly assumed jurisdiction and whether the evidence showed it was in the child's best interest for Mississippi rather than Florida to assume jurisdiction.

V.
It is apparent that the mother has not had her day in court to determine what is in the best interest of the child regarding custody. The husband's failure to timely file and serve information on the child's residency as required by section 93-23-17 of the Mississippi Code, and the Florida court's refusal to determine whether it is in the child's best interest to change custody from the mother to the father, have operated to deprive her of a fair hearing in an appropriate forum to decide the custody issue, contrary to the spirit and purpose of the UCCJA. The order is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
WIGGINTON, J., concurs.
JOANOS, J., dissents with opinion.
JOANOS, Judge, dissenting.
The trial court's writ of habeas corpus ordered the return of the child to his father's custody. The majority opinion reverses that order. The majority have expressed the view that the trial judge erred in accepting the validity of the Mississippi court judgment granting custody to the father. I respectfully dissent. I cannot agree that there are deficiencies in the Mississippi proceedings in this record which would require a Florida court to bypass that state's judgment.
The appellant has made two arguments. Appellant's first argument is that the appellee failed to substantially comply with the Uniform Child Custody Jurisdiction Act by failing to provide the required child custody affidavit of information in the initial pleading. I disagree. Appellant's argument is not that the appellee failed to file the required information, for the record reveals that it was filed before the judgment was entered. Nor is it that service was not made upon her, or that she did not have notice that the Mississippi court matter *218 had been instituted. She knew that the Mississippi proceedings were taking place but did nothing. The purpose of the Uniform Child Custody Jurisdiction Act (UCCJA) affidavit is to advise the trial court of any custody decisions or pending actions involving the same child in order to avoid jurisdictional competition. An Ohio appellate court examined this requirement in Cook v. Court of Common Pleas of Marion County, 28 Ohio App.3d 82, 502 N.E.2d 245 (Ohio App. 1986), and concluded that the requirement as to the time of filing of the affidavit was directory, not mandatory. That is an appropriate analysis. As the requirement was not jurisdictional, failure to file the affidavit with the complaint, when, as in this situation it was filed later, should not be deemed to have deprived the Mississippi court of jurisdiction over the child.
Appellant's second argument is that the Mississippi court did not qualify to exercise custodial jurisdiction under the provisions of the Uniform Child Custody Jurisdiction Act as found in section 61.1308, Florida Statutes (1989), or identically in section 93-23-5, Mississippi Code (1972). Again, I disagree. The Mississippi court did not make a specific finding as to which requirement of the section was met. The record is clear, however, that there was no previous or pending proceeding in another state when the Mississippi matter was instituted. The record, as well as the majority opinion, also amply reflect sufficient information by which the Mississippi court could have determined that it was in the best interest of the child for Mississippi to exercise jurisdiction under section 61.1308(1)(b) in that the child and one parent had a "significant connection" with Mississippi, and that there was available in Mississippi "substantial evidence concerning the child's present or future care, protection, training and personal relationships". Under the circumstances, the Florida court should and did yield to the jurisdiction of the Mississippi court. The trial court should be affirmed.
The result reached by the majority opinion, by which a second court, this one in Florida, is going to deal with the question of the child's custody, a matter already being considered by the Mississippi court, flies in the face of the purposes of the UCCJA. Section 61.1304, Florida Statutes (1989). It was exactly this kind of conflict that the act was intended to eliminate.
NOTES
[1] The father testified that he told his wife before she moved back to Florida that he was going to file for divorce in Mississippi, but he did not tell her that he was going to ask for custody of the child.
[2] Section 93-23-7 requires that contestants be given notice and an opportunity to be heard in proceedings under this chapter; nonresidents must be given notice and opportunity to be heard pursuant to section 93-23-9. This latter section requires that such notice be given as required by law for the service of process.

Section 93-23-7 does not set forth the jurisdictional prerequisites to the court's exercising jurisdiction to determine child custody; these are found in section 93-23-5 of the Mississippi Code.
[3] This appeal has been perfected under rule 9.130 as from a nonfinal order, and the portions of the record originally filed with this court appear in the appendices to the initial and answer briefs.
[4] Habeas corpus proceedings to recover custody of minor children may be based on chapter 79; but that statute does not preclude the operation of common-law principles in the use of the writ. 28 Fla.Jur., Habeas Corpus § 64 (1981).
[5] Section 61.1328 provides:

The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this act, or which decree was made under factual circumstances meeting the jurisdictional standards of the act, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this act. (Emphasis added.)
[6] Section 93-23-17 corresponds to section 61.132, Florida Statutes (1989), and UCCJA, § 9, 9 U.L.A. 266 (1988).
[7] The official comment to § 9, UCCJA (see note 7), states:

It is important for the court to receive the information listed and other pertinent facts as early as possible for purposes of determining its jurisdiction, the joinder of additional parties, and the identification of courts in other states which are to be contacted under various provisions of the Act.
9 U.L.A. 266 (1988) (emphasis added).
[8] The copy of the affidavit in the appendix to appellee's answer brief contains no certificate of service.
[9] This is made all the more doubtful by the court's recitation in the judgment that "this Court under the Uniform Child Custody Jurisdiction Act, Section 93-23-7, of the Mississippi Code 1972, Annotated, has jurisdiction over the minor child hereinsetforth and is the competent Court to decide Child Custody matters and to make the Child Custody determination by initial Complaint for Divorce filed in this case." This recitation suggests that the court was looking only to service of the complaint on the mother as the jurisdictional basis for its custody decree.

In any event, it appears that the trial court did not undertake to obtain a copy of the transcript of the court record in Mississippi as authorized by section 61.1346 to make this determination.
[10] The language of this section is substantially similar to the language of section 61.1308, Fla. Stat. (1989), and section 3 of the UCCJA.
[11] "Home state" is defined as

the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.
Section 93-23-3(f), Mississippi Code. The definition under the Florida act and the UCCJA is identical. § 61.1306(5), Fla. Stat. (1989); § 3, UCCJA.
[12] § 93-23-5(1)(b), Miss.Code. The parties agree that the Mississippi court could not have assumed jurisdiction under section 93-23-5(1)(a) or (c), because Mississippi was not and had not ever been the child's "home state" as required by (a), and because the child was not physically present in that state as required by (c).
[13] It is well established that more than one state may have concurrent jurisdiction, in the sense of power to act, in child custody disputes; it is the purpose of the UCCJA to establish requirements and procedures to prevent interstate competition and conflicts regarding jurisdiction of such disputes by limiting the exercise of such jurisdiction to the one court found to be the most appropriate under the standards codified in section 93-23-5(1), Mississippi Code, and its Florida counterpart, section 61.1308(1). Thus, where two states may be able to exercise jurisdiction of a dispute, the UCCJA permits only one to exercise jurisdiction and requires the other to relinguish its jurisdiction. This construction of the act was recently confirmed by the supreme court in Yurgel v. Yurgel, 572 So.2d 1327 (Fla. 1990). It should be reiterated, however, that this purpose does not preclude the Florida court in this case from hearing the mother's objections and determining whether the Mississippi court exercised jurisdiction in accordance requirements of the UCCJA.
[14] Obviously the circuit court was not convinced that an immediate change of custody from the mother to the father was necessarily in the child's best interest because it stayed the effect of its order pending this appeal and left the child in the mother's custody.