677 So.2d 1341 (1996)
Maja STOCK, Appellant,
v.
Gary STOCK, Appellee.
Nos. 94-1267, 94-2889.
District Court of Appeal of Florida, Fourth District.
August 7, 1996.
*1342 Nancy W. Gregoire, Joel L. Kirschbaum and Katherine O. Birnbaum of Bunnell, Woulfe, Kirschbaum, Keller & McIntyre, Fort Lauderdale, for appellant.
Diana W. Centorino and Joseph Centorino of Centorino & Waterous, P.A., Fort Lauderdale, for appellee.
*1343 PARIENTE, Judge.
This appeal concerns the application of the Uniform Child Custody Jurisdiction Act (the UCCJA) to an international custody dispute involving the courts of Switzerland and Florida. Because the Florida court did not comply with the letter and spirit of the UCCJA, two conflicting and diametrically-opposed custody decrees were entereda Swiss decree awarding custody of the parties' two children to the mother with no visitation to the father, and a later Florida judgment awarding custody to the father with no visitation to the mother. What we have here is a failure to communicate between both the parents and the courts. We reverse the judgment of the Florida court because of substantial noncompliance with the requirements of the UCCJA.

BACKGROUND FACTS AND PROCEDURAL HISTORY
Appellant Maja Stock (the mother), a citizen of Switzerland, married Gary Stock (the father), an American citizen, in Switzerland in December 1973. The couple had two children, both born in the United States: Alexandra, born in 1982; and Ian, born in 1985. The Stocks separated in August 1988 at which time the children resided primarily with the mother.
In January 1992, before any litigation had been instituted in this action, the parties participated in voluntary mediation which produced a handwritten agreement entitled "Understandings." The parties differ in their explanations of the reasons for participating in mediation, but both parties agree that the mediation was non-binding. Under their agreement, the father was to be the primary residential parent, and the mother was to have weekend and other liberal visitation. The mother states that this was to be a temporary time-sharing arrangementan arrangement which was to be reviewed at the "next meeting." However, there was no next meeting. On March 1, 1992, the mother returned to Switzerland, taking the children with her. According to the father, this amounted to kidnapping.
The mother's return to Switzerland triggered a series of legal proceedings. On March 9, 1992, the father filed an "Emergency Petition for Return of Minor Children, Petition for Writ of Habeas Corpus and Petition for Child Pick-Up Order" (the habeas proceeding) in Florida. In his petition, the father requested that the trial court enter an order authorizing a legal pick-up of the minor children, which the court granted ex parte. The mother was neither served nor noticed in this proceeding either before or after the order was rendered. The habeas proceeding was subsequently dismissed in 1994 by order of the trial court based on lack of prosecution and failure to serve the mother.
On May 15, 1992, the father filed a petition in Switzerland, based on the order in the habeas proceeding, seeking return of the children pursuant to the Hague Convention on the Aspects under Civil Law of International Child Abduction (the Hague proceeding).[1] A hearing was held on the father's petition on July 1, 1992. The father did not attend the hearing; instead, he asked that he be released from attending while being represented by his attorney. The trial court granted that request "without hesitation." At the hearing, the mother testified that the children did not want to return to the United States. The Swiss court appointed a psychiatrist who interviewed the children and the mother.
Prior to the time that an order was entered by the Swiss court on the father's petition, the father took matters into his own hands by hiring a private investigator who brought Ian back to Broward County on August 27, 1992. In the words of the mother, Ian was "kidnapped," but Alexandra "escaped." The father contends that his actions were valid based on the Florida court's order in the habeas proceeding. By then, however, Ian had been living in Switzerland for almost six months, and the Swiss court was actively *1344 involved in the custody dispute as a result of the Hague proceeding initiated by the father.
On October 26, 1992, the Swiss court entered a decree on the father's petition, with detailed findings of fact and conclusions of law. The Swiss court stated its decree was entered in accordance with the Hague Convention. The court's decree incorporated the opinions of the court-appointed psychiatrist, an expert in childhood and youth psychiatry in Zurich. The psychiatrist stated that "the children have already developed strong affective ties to their present environment" in Switzerland. Taking into account Alexandra's expressed preference, the psychiatrist concluded she was "quite decidedly opposed to being taken to her father." The psychiatrist was of the opinion that "a return to the USA could substantially endanger" the emotional health of the children. The Swiss court concluded that "the return of the daughter must without question be refused," and since siblings should not be separated, the same decision must be made in regard to the son. The father appealed this decree to a higher Swiss court, but the decree was affirmed in April 1993.
While the Hague proceeding was still pending, the mother initiated a dissolution of marriage proceeding in Switzerland on October 1, 1992, seeking a divorce and custody of the children. The father failed to appear at any hearings in connection with this proceeding and failed to participate despite being served with process and despite warnings that an unexcused absence would result in a decision based upon the existing record. It appears that for at least part of these proceedings the father was represented by an attorney.
The Swiss court, cognizant of the need to resolve the jurisdictional conflict with Florida, initially deferred making a custody decision until it had received memoranda from the parties on this issue. However, the court file contains the court's typewritten notes from subsequent telephone conversations between the court and the parties' attorneys, including the notation that the father's attorney had informed the court that the father had withdrawn his suit in the United States and would not rely on the "litis pendens" objection. The father vehemently denies the accuracy of these statements, but the Swiss court proceeded with the custody determination in a good-faith belief that these representations were accurate and thus never explicitly addressed the jurisdictional conflict.
Meanwhile back in the United States, in February 1993, the father filed a separate dissolution proceeding seeking sole custody of his two children. It is this proceeding which led to the judgment now on appeal. On March 16, 1993, the mother moved to dismiss the father's petition on the grounds that divorce and custody proceedings were pending in Switzerland and the father had participated in the Swiss litigation. The trial court summarily denied this motion. In April 1993, the mother filed a Motion to Abate or Stay Proceedings pending final disposition of her Swiss divorce proceeding. The trial court never ruled on this motion and never communicated with the Swiss court to ascertain the status of the proceedings or at a minimum to advise the Swiss court of the pendency of the Florida proceedings.
On August 31, 1993, the Swiss court entered a detailed order granting the mother a divorce and awarding her custody of both children, with no visitation to the father. In this ten-page document, the Swiss decree recognized the father's allegations that the children had been wrongfully removed from him, but noted the existence and finality of the Hague proceeding which rejected these claims and which had been upheld on appeal. The Swiss decree also acknowledged the opinion of the court-appointed psychiatrist in the Hague proceeding and the opinions of two additional psychologists that "the children have a disturbed relationship with their father." The decree contained a finding that the father had not allowed the mother contact with Ian since his removal from Switzerland and had returned unopened a gift that Alexandra had sent Ian.
On December 1, 1993, the Florida trial court entered its Final Judgment of Dissolution of Marriage. In March 1994, the trial court entered a Final Judgment Regarding Custody and Visitation. In direct conflict with the Swiss order entered six months *1345 earlier, the trial court awarded sole custody to the father with no visitation rights to the mother. The final judgment contains no findings of fact, and we have no record from which to discern the basis for the trial court's decision.

ANALYSIS
Florida has adopted the UCCJA. See §§ 61.1302-61.1348, Fla. Stat. (1993); Siegel v. Siegel, 575 So.2d 1267, 1269 (Fla. 1991). The general purposes of the UCCJA include: avoiding jurisdictional competition and conflict with other courts in matters of child custody; promoting cooperation between courts with the best interests of the child in mind; assuring that litigation regarding custody takes place ordinarily in the jurisdiction in which the child and family have the closest connection; discouraging continuing controversies over child custody; and avoiding relitigation of child custody decisions. § 61.1304; Siegel, 575 So.2d at 1269. The goals of the UCCJA apply even when the other jurisdiction is a foreign nation. See § 61.1348; Dixson v. Cantrell, 564 So.2d 1138 (Fla. 1st DCA 1990); Al-Fassi v. Al-Fassi, 433 So.2d 664, 666 (Fla. 3d DCA 1983), review denied, 446 So.2d 99 (Fla.1984).
Section 61.1348 of the UCCJA provides that:
The general policies of this act apply to the international area. The provisions of this act relating to the recognition and enforcement of custody decrees of other states apply to decrees involving legal institutions similar in nature to custody institutions, rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons.
Section 61.1328, which pertains to recognition of out-of-state custody decrees, requires that:
The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this act, or which decree was made under factual circumstances meeting the jurisdictional standards of this act.
Section 61.1308 sets forth the circumstances under which a court may exercise jurisdiction over a custody dispute. Siegel, 575 So.2d at 1269. Jurisdiction is proper if the state is the child's home state or was the child's home state within six months before commencement of the custody proceeding. § 61.1308(1)(a); see § 61.1306(5). Jurisdiction is also proper if it is in the best interests of the child for the court to assume jurisdiction because the child and at least one contestant have a significant connection with the state and there is substantial evidence available concerning the child's present or future care, protection, training and personal relationships. § 61.1308(1)(b).
The UCCJA recognizes that more than one court may satisfy the jurisdictional criteria of section 61.1308 at any one time. Siegel, 575 So.2d at 1270. However, subsection 61.1314(1) prohibits a court having jurisdiction under section 61.1308 from exercising that jurisdiction
if, at the time the petition was filed in its court, a proceeding concerning custody of the child was pending in another state exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.
§ 61.1314(1).
Subsection 61.1314(3) mandates communication "[i]n the spirit of cooperation so that there will be no jurisdictional conflicts." See Burch v. Burch, 424 So.2d 187, 189 (Fla. 4th DCA 1983). This duty to communicate applies whenever the court learns that custody proceedings are also pending in another jurisdiction. See Rosso v. Farnell, 581 So.2d 989 (Fla. 2d DCA 1991). Subsection 61.1314(3) provides:
If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending, to the end that the issue may be litigated in the more appropriate forum and that *1346 information be exchanged in accordance with §§ 61.134-61.1346.... If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction, it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.
(Emphasis supplied).
Section 61.1314 has been described as "the very essence of" the UCCJA because when it is strictly complied with, jurisdictional conflicts are resolved and conflicting orders prevented. Burch, 424 So.2d at 189. The duty of the trial court to communicate with courts of other jurisdictions where custody proceedings are pending is a key ingredient to effectuating the intent of the UCCJA because effective communication between the jurisdictions should lead to the dispute being resolved in the most appropriate forum. Burch. Only if the courts cannot agree on the most appropriate forum does the priority-of-filing principle enunciated in subsection 61.1314(1) require that the dispute be litigated in the first court to exercise jurisdiction substantially in conformity with the UCCJA. Siegel, 575 So.2d at 1271.
Section 61.1314 has been applied to custody proceedings where the first court to exercise jurisdiction was a foreign tribunal if the foreign tribunal was acting substantially in conformity with the UCCJA:
[W]hen even a foreign tribunal, acting at the instance of a particular party, is the first to exercise custody jurisdiction, a Florida court later petitioned by the same party should defer to the first one, so long as that court affords an effective opportunity to be heard and is motivated by the best interests of the childwhen, in other words, it is acting substantially in conformity with the Uniform Child Custody Jurisdiction Act.
Izmery v. Izmery, 559 So.2d 1211, 1212 (Fla. 3d DCA 1990).
The trial court here erred when it failed to stay the proceedings and communicate with the Swiss court pursuant to subsection 61.1314(3). Subsection 61.1314(3) is not discretionary; it mandates that a court stay a pending custody action when informed of a custody proceeding in another forum until it determines, after communication with the court, which court is the most appropriate forum to resolve the dispute. See Rosso.
At the very least, communication between the courts would have alerted the Swiss court to the actual status of the Florida proceedings and provided the Florida court with a full account of the status of the Swiss proceedings. Instead of the entry of two conflicting orders, one court may have deferred to the other as the more appropriate forum.
Communication would also have provided both courts with an opportunity to exchange information enabling the Florida court to obtain the psychiatric and psychological evidence that the Swiss courts had developed. The words of Judge Zehmer in Hickey v. Baxter, 461 So.2d 1364, 1370 (Fla. 1st DCA 1984), seem particularly appropriate here:
This case deals primarily with an initial custody dispute between parents, and the parents' respective rights must obviously be recognized. It must also be kept in mind, however, that the court's paramount concern is the best interests of the childrennot just the relative rights of the natural parents to custody. As the commissioners' note to section 3 of the uniform act points out (section 61.1304), "the [best] interests of the children are served when the forum has optimum access to relevant information about the child and family." Uniform Child Custody Jurisdiction Act, § 3, Commissioners' Note, 9 U.L.A. at 124 (1979).
(Emphasis supplied).
Communication may have led to an amicable resolution of the jurisdictional conflict; without the communication, no amicable resolution was possible. The inescapable conclusion is that the failure of the trial court to communicate contributed significantly to the ensuing controversy. See Crippen v. Crippen, 610 So.2d 686, 688 (Fla. 1st DCA 1992), dismissed, 618 So.2d 1367 (Fla.1993). The trial court's failure to stay the proceedings pending communication with the Swiss court and an exchange of information was a critical error, mandating reversal of the trial court's final judgement.
*1347 An alternative basis for reversing the judgment is the noncompliance of the father with section 61.132. Section 61.132 requires every party in a custody proceeding to provide the trial court with information under oath with respect to his participation in any other custody proceeding concerning the same child. Timely compliance with this UCCJA provision is essential to facilitate a proper determination of jurisdiction. See Walt v. Walt, 574 So.2d 205, 213 (Fla. 1st DCA 1991).
Section 61.132 also imposes a continuing duty to inform the court during the pendency of the proceeding. In Crippen, the second district explained that continually updating affidavits pursuant to section 61.132 is important because it aids the court in: (1) determining its jurisdiction; and (2) identifying courts in other jurisdictions which should be contacted in the event of conflict. 610 So.2d at 688.
Here, the father's affidavit was defective in that it was not under oath and did not contain information concerning the Hague proceeding in which the father fully participated. The father also failed to update the affidavit as required as to the outcome of the Swiss custody proceeding. These defects were not cured by timely amendment prior to the entry of judgment. See Walt.
Finally, the failure of the trial court to address the priority-of-filing issue requires reversal in this case because we are unable to state as a matter of law that the Florida court had priority over the Swiss court. The absence of any findings as to why the trial court proceeded without addressing the motion to stay leaves us to guess why the trial court disregarded the pending Swiss proceedings. Cf. Ennis v. Conran, 648 So.2d 784 (Fla. 4th DCA 1994) (trial court erred in granting motion to abate by failing to make any findings as to which forum was more convenient or appropriate and in failing to specify its basis for deferring jurisdiction).[2]
There was ample reason for the trial court to have questioned whether it should have proceeded in light of the pendency of the Swiss custody action. Because the Swiss custody action was pending prior to the Florida custody action, subsection 61.1314(1) would give Switzerland priority-of-filing if no agreement between the courts could have been reached. In order for the Florida court to have properly exercised jurisdiction, the trial court would have had to find that the Swiss court was not exercising jurisdiction substantially in compliance with the UCCJA. See Izmery. This in turn would have required a careful consideration of the proceedings in the Swiss court.
Although the father urges that the trial court acted properly when it proceeded without regard to the pending Swiss custody proceeding, the father's argument hinges on the incorrect assumption that the habeas proceeding conclusively vested Florida with priority over any subsequent Swiss proceedings. There are several reasons why this is an incorrect assumption.
There is initially a serious question as to whether the habeas proceeding would qualify as a proper proceeding to determine the custody of a child for purposes of the UCCJA. See §§ 61.1306(3), 61.1314(1). In Walt, the first district described the nature of habeas corpus in the context of child custody:
[H]abeas corpus is by definition an independent proceeding to be used when no other appropriate proceeding for obtaining custody is pending or available.... Habeas corpus is recognized to be an appropriate remedy for enforcement of a foreign child custody decree.... However, the use of habeas corpus must at least accord with the applicable provisions of the UCCJA.
574 So.2d at 210.
In this case, habeas corpus was an improper remedy because there had not been *1348 a prior legal determination as to custody. We also note that the Florida court would be without jurisdiction to issue a writ for execution beyond the territorial jurisdiction of the court. See Stein v. Stein, 537 So.2d 613 (Fla. 4th DCA 1988).
The father did not convert his ex parte habeas petition into a dissolution and custody action by filing an amended pleading and serving the mother. Instead, the father abandoned the habeas proceeding and filed a separate dissolution and custody petition months after he had initiated the Hague proceeding and the mother had filed the Swiss dissolution and custody petition. In fact, the habeas proceeding was subsequently dismissed by court order based on the father's failure to timely serve the mother and to prosecute the case.
Both sections 61.131 and 61.1312 require notice and an opportunity to be heard; these requirements are integral to the UCCJA. The mother was provided neither notice nor an opportunity to be heard in the habeas proceeding either before or after the entry of the Florida court's order in the habeas proceeding. The order in the habeas proceeding thus cannot be considered to have any legal force or effect, especially in light of the subsequent order of dismissal of the entire proceeding.
The father also dwells on the argument that the mother improperly took the children from this country. Certainly a court can decline to exercise jurisdiction over a custody dispute when a party has wrongfully taken the child from another state "if this is just and proper under the circumstances." See § 61.1318. The Swiss court entertained this argument and rejected it. Also, at the time that the mother removed the children from Florida, there was no binding custody order.
If at the time that the children were removed from Florida the father had filed a proper custody petition and provided the wife with notice and an opportunity to be heard, not only would Florida have appropriately exercised jurisdiction as the children's "home state," but that proceeding would have had priority over the subsequent Swiss proceedings. This scenario did not occur due to the father's choice of litigation and self-help strategies.
Instead, at the time that the father filed the dissolution and custody petition in Florida in February 1993, the Swiss court had already litigated in the Hague proceeding the issue of whether the children should be returned to the United States as a result of the mother's conduct. There was also a pending proceeding to determine custody filed by the wife.
When the Swiss court exercised jurisdiction over the dissolution and custody action, the Swiss court could have qualified for UCCJA jurisdiction pursuant to either subsection 61.1308(1)(a) or 61.1308(1)(b) because the mother and Alexandra had been residing in Switzerland for over six months, the Swiss court had litigated a custody matter in the Hague proceeding, and the Swiss court had access to the psychiatric information developed in connection with the Hague proceeding. Instead of staying its proceedings, communicating with the Swiss court, and then deciding the priority-of-filing issue if no amicable resolution had been reached, however, the trial court proceeded full steam ahead with the end result that dualand conflicting judgments were issued.
Although we reject the contention that the habeas proceeding vested Florida with priority, we likewise decline to rule as a matter of law that the Swiss proceeding had priority because of the deficiencies in the record before us. The lack of communication between the Florida court and the Swiss court, the lack of a competent record to support a determination on the priority-of-filing issue, and the lack of a properly-executed UCCJA affidavit require that this case be reversed and remanded. See Hickey. The factors to consider on remand are whether Switzerland properly exercised jurisdiction in conformity with the policies of the UCCJA, properly considered the best interests of the children, and provided the father with notice and an opportunity to be heard. See § 61.1348; Dixson; Izmery; cf. Whelpley v. De Athayde Costa, 648 So.2d 1252 (Fla. 4th DCA 1995)(where notice provided only after entry of Brazilian court order, Brazilian decree not entitled to recognition).
*1349 We likewise cannot determine as a matter of law based on the record provided whether the father voluntarily participated in the Swiss proceedings. Where a parent voluntarily consents and litigates in a court which exercises jurisdiction substantially in conformance with section 61.1308, that court's decrees should be honored. Roby v. Nelson, 562 So.2d 375 (Fla. 4th DCA 1990); see also Detko/Roberts v. Stikelether, 370 So.2d 383 (Fla. 4th DCA 1979); cf. Mondy v. Mondy, 428 So.2d 235, 238 (Fla.1983). Here, however, the father contests that he had sufficient opportunity to be heard in the Swiss divorce proceedings.
All of these determinations must be made by the trial court. The trial court will most likely require an evidentiary hearing to flesh out the competing claims of the parties.

THE PRESENT
There are no winners in this case and the children have been very much the losers by virtue of their parents' combined actions. While both parents may love these children very much, it is clear that the actions of both parties contributed to this unfortunate situation.
The present status and location of the children are unknown to us except that we presume Alexandra remains in Switzerland with her mother while Ian remains in Florida with his father. While the Swiss decree may be entitled to recognition and enforcement, modification of the Swiss decree in accordance with the UCCJA may be warranted for several reasons. First, Ian has been back in this country for several years. Second, there is no provision for visitation by the other parent in either court's orders.
Communication with the Swiss court will be a key ingredient to a successful resolution of this dispute and we direct all parties to cooperate in this goal so that the best interests of the children are truly served. This goal will not be served by continued charges and counter-charges of mutual misconduct. See Mondy, 428 So.2d at 238.
We thus reverse and remand with directions that the final judgment be vacated and that proceedings take place consistent with this opinion and with the spirit of the UCCJA. We accordingly do not address whether the trial court erred in not holding an evidentiary hearing on the mother's rule 1.540 allegations.
REVERSED AND REMANDED.
DELL and KLEIN, JJ., concur.
NOTE: DELL, J., did not participate in oral argument, but has had the opportunity to review the entire proceedings.
NOTES
[1] The facts and circumstances of the Swiss proceedings are based on documents from the Swiss courts provided by the mother in her appendix on appeal. The father does not contest the accuracy of these documents, but does contest the significance to be attributed to the various proceedings and his extent of participation in the proceedings.
[2] Although we have not been asked to address this issue specifically, the same policies requiring the trial court to set forth its findings when deferring jurisdiction dictate that a trial court also address its reasons for exercising jurisdiction in light of a simultaneous proceeding pending in another court. This requirement ensures that there is a reasoned decision for either deferring to another jurisdiction or proceeding even in light of proceedings pending in another jurisdiction. See Ennis v. Conran, 648 So.2d 784 (Fla. 4th DCA 1994).