592 So.2d 282 (1991)
Glen LEE and Ada Lee, Appellants,
v.
Glenda S. MEEKS, Appellee.
No. 90-243.
District Court of Appeal of Florida, First District.
December 13, 1991.
Rehearing Denied January 22, 1992.
Jeffrey P. Whitton, Panama City, for appellants.
Cecile M. Scoon, Panama City, for appellee.
PER CURIAM.
Glen and Ada Lee appeal an order denying their petition for writ of habeas corpus requiring Glenda Meeks to appear before the court with her minor child. The order addresses a Tennessee court order decreeing that temporary custody of the child be awarded to the Lees pending further order of that court. We affirm the trial court's denial of the petition, holding that the court correctly resolved the issue before it.
Ada Lee is the paternal grandparent, and Glenda Meeks is the natural mother, of the minor child involved in the instant action. Based on the parties' court-approved statements of the evidence, it would appear that prior to the institution of this proceeding, extensive hearings were held in a Tennessee court pertaining to divorce and child custody issues involved in the dissolution of marriage of Meeks and Jackie Edward Parks, Ada Lee's son. Custody of their minor child was granted to Meeks. However, subsequent to the final dissolution of marriage, the Tennessee court also awarded grandparent visitation rights to the Lees.
Following her divorce, Meeks remarried and continued to live in Tennessee for a period of time during which she gave birth to twins. Due to health problems of one of the twins, Meeks was forced to seek a more amenable climate. Accordingly, in May of 1989, she and her new husband, along with their children  including the minor child at issue here  made the first of several moves to different states settling shortly thereafter in Bay County, Florida, in June or July of 1989. Meeks was not prohibited by the Tennessee final decree of dissolution from moving her eldest child out of the state of Tennessee, and upon their arrival in Panama City, Meeks called Ada Lee to inform her of her new address and to set up a visitation schedule. Meanwhile, the *283 child had spent the entire month of July with the Lees.
On September 8, 1989, the Lees filed a petition in the Tennessee court seeking a court order to change custody of the child, and to have Meeks held in contempt of court. In their petition, the Lees alleged that they were informed by Meeks when she settled in Florida that the "only visitation available to the Petitioners would be one day during the child's spring break." The Lees then alleged:
3. It is not in the best interest of the minor child to be constantly moved as in the life of a nomad and further not in the childs [sic] best interest to be kept from the Petitioners. The course of conduct that has been exhibited by the Respondent over the years has always been calculated to harass the Petitioners, and this course of conduct is extremely detrimental to not only the Petitioners but the minor child.
4. The Respondent has willfully and maliciously removed the minor child to Florida for the sole purpose of denying the Petitioners' visitation.
The record next indicates that Meeks received a letter from the Lees' attorney on September 15, 1989, enclosing the abovementioned petition filed in the Circuit Court for Stewart County, Tennessee, at Dover. An order was entered on October 17, 1989, transferring the cause to the Chancery Court for Stewart County, Tennessee, at Dover, certifying that a true and correct copy of the order was mailed to Meeks at her Florida address. Thereafter, Meeks received a certified letter, return receipt requested, from the Lees' attorney advising Meeks that the cause "has been set for Court on November 20, 1989, at 10:00 a.m. in the Chancery Court for Stewart County in Dover, Tennessee."
There is no dispute that Meeks received either letter. However, in their court-approved statement of the evidence the Lees maintain that Meeks did not request a continuance and had no contact with the court concerning the hearing. To the contrary, in her court-approved "Objections Or Proposed Amendments To Appellants['] Statements Of Evidence," Meeks asserts that, following receipt of the November 20 letter, she contacted Larry B. Watson, counsel for the Lees, to request a continuance due to the continuing ill health of one of her twins. According to Meeks, the attorney refused to cooperate. The infant twin was thereafter hospitalized from November 17 through November 21, 1989. Consequently, Meeks did not attend the hearing held on November 20, 1989, nor was she represented by counsel at the hearing.
Following the hearing, the Tennessee court entered an order decreeing that temporary custody of the child be awarded to the Lees pending further order of the court. In pertinent part, the Tennessee court found as follows:
That it is the intent of GLENDA S. MEEKS to frustrate any exercise or [sic] jurisdiction by this Court, she has evidenced and [sic] unwillingness to allow proper visitation with the parties [sic] minor child and she is now subjecting the child to unsafe environment for at least partially the purpose to deny visitation, GLENDA S. MEEKS has moved from a stable environment to an unstable one to remove the child from the jurisdiction of the Court; she had actual notice of the hearing and choose [sic] not to be present therefore the Court finds she is seeking again to frustrate the exercise of the jurisdiction by this Court; ...
Thereafter, the Lees filed a petition for writ of habeas corpus in Bay County, Florida, to require Meeks to appear before the circuit court and to have with her the minor child. An order to show cause was entered directing the parties to appear before the court on December 5, 1989. On that day, the Lees and Meeks appeared. An order granting the petition was entered on December 7 scheduling a full hearing for December 14. Following that hearing, at which a court reporter was not present and during which Ada Lee and Meeks testified, the trial court entered an order dissolving its order of December 7 and decreeing that the Lees would take nothing by their petition.
*284 In the order, the trial court made several findings, one in particular being that since the Lees were "proceeding supplementary in the original divorce action," due process of law required that Meeks be served with supplemental process advising her of the consequences of her failure to respond or plead. The trial court observed that the only witnesses who testified before the Tennessee court were the Lees' daughter and son-in-law, who had visited with Meeks briefly in early September 1989, and who apparently never entered Meeks' home. The trial court noted that the child was enrolled in kindergarten and was receiving counseling from the Bay County Life Management Center.
The court went on to find that
[t]he order of the Tennessee court does not address the best interest of the minor child, but only deals with the allegation that Glenda S. Meeks is attempting to frustrate the jurisdiction of the Tennessee court by moving from a stable environment to an unsafe environment, and for at least the partial purpose of denying visitation to the paternal grandparents... .
In a habeas corpus proceeding for the custody of a child under the Uniform Child Custody Jurisdiction Act ..., the controlling consideration in awarding custody of such a child is the best interest of that child. When all of the parties, and the child, are before a court of this State, the court is not bound by the full faith and credit clause to automatically enforce the judgment of the foreign state under the comity principal [sic]. In this case, it is clear from the face of the order which the Plaintiffs rely, that the Tennessee court did not address the best interest of the minor child. It is equally clear that none of the orders or judgments of the Tennessee court which were reviewed by this Court, restricted or prohibited the Defendant or the minor child from leaving the state of Tennessee. There was no evidence presented to this Court that would support a finding that the Defendant was an unfit mother or that the best interest of the minor child would be served by delivering it to the Plaintiffs pursuant to the Tennessee court order. On the contrary, the evidence was that the child is enrolled in school in Florida, living with his mother and step-father and siblings, and that he is being counseled by the Bay County Life Management Center. This court finds that the best interest of the minor child requires that the Plaintiffs' Petition be denied. Further, the Court finds that under the circumstances of this case, where the grandparents were proceeding supplementary in the original divorce action between the Defendant and her former husband, and the short informal notice of the hearing given by Plaintiffs' attorney, that due process of law requires she be served with supplemental process advising her of the consequences of her failure to respond or plead.
On appeal, the Lees raise two points challenging the trial court's final order. In their first point they argue that, contrary to the trial court's conclusion, the Tennessee court afforded full due process rights to Meeks in conformance with the relevant provisions of the Uniform Child Custody Jurisdiction Act.[1] Their second point challenges the trial court's conclusion that the Tennessee court was not concerned with the best interest of the child on the basis that the finding is not supported by the record and is outside the jurisdiction of the court. To the contrary, we hold that the appealed order comports with well-established Florida law applicable to habeas corpus proceedings instituted to obtain custody of a child.
The Lees' selection of the remedy of habeas corpus is significant. In Walt v. Walt, 574 So.2d 205 (Fla. 1st DCA 1991), we explained the difference between simply petitioning for enforcement of an order pursuant to the provisions of the UCCJA, section 61.1332, Florida Statutes (1989), *285 and seeking enforcement via a petition for a writ of habeas corpus:
Initially, we point out that habeas corpus is by definition an independent proceeding to be used when no other appropriate proceeding for obtaining custody is pending or available. While its use as a remedy in this case was not challenged by appellant in the court below, ordinarily habeas corpus is not resorted to where there is another available and adequate remedy, such as the provisions of the UCCJA as adopted in Florida, e.g., §§ 61.1328, 61.1332, 61.1346, Fla. Stat. (1989), which provide an adequate remedy to a non-resident parent seeking to enforce a valid out-of-state custody decree. See Trujillo v. Trujillo, 378 So.2d 812, 815 n. 18 (Fla. 3d DCA 1979). Habeas corpus is recognized to be an appropriate remedy for enforcement of a foreign child custody decree, however, so the plaintiff's use of the remedy in this case is not, per se, grounds for reversal. See 28 Fla.Jur.2d Habeas Corpus § 65 (1981). However, the use of habeas corpus must at least accord with the applicable provisions of the UCCJA. Trujillo.

The nature of habeas corpus was concisely described by the supreme court in Crane v. Hayes, 253 So.2d 435 (Fla. 1971):
As a general rule, a habeas corpus proceeding is an independent action, legal and civil in nature, designed to secure prompt determination as to the legality of restraint in some form... . When child custody is involved, however, a habeas corpus action takes on the nature of an equitable proceeding, and the trial judge has the duty and authority to enter orders which will best conserve the welfare of the child, subordinating if necessary the legal rights of the parents... .
There is no question but that habeas corpus is a proper proceeding to obtain custody of a child wrongfully withheld. However, this does not mean that a habeas corpus retains its form as a special proceeding of high priority and limited scope, designed to secure summary determination of rights and needs relating to restraint. Upon entry of a judgment settling the question, jurisdiction terminates, and the judgment becomes subject to timely review just as any other final judgment.
... An order of a court in a sister state granting temporary custody is not res judicata, and a Florida court has a duty on petition for writ of habeas corpus to determine the child's best interest. ... An order by a foreign court which is without jurisdiction is not binding.
253 So.2d at 439-40 (citations omitted)... .
Although enforcement of a foreign custody decree remains subject to the requirements of the UCCJA, the following principles govern the use of habeas corpus as the enforcement remedy:
A custody award of another state will be enforced in Florida by habeas corpus absent any showing of legal reason why the court should not recognize and enforce the order of the court of the sister state. However, the trial court is not bound by the prior foreign decree to the extent that the court can refuse to determine the issue of who should have custody of the child. While the trial court may properly consider the foreign decree as a factor in deciding the custody issue, the trial court is not bound by the full faith and credit clause to automatically enforce the foreign decree. Under the comity principle the trial court may, in its discretion, enforce the foreign decree, but only after that court has determined whether it is in the best interests of the child to do so.
28 Fla.Jur.2d Habeas Corpus § 65, p. 496 (1981). In determining the right to the custody of a child by habeas corpus, the welfare of the child is a controlling factor that must be considered by the court. 28 Fla.Jur.2d, Habeas Corpus § 114 (1981). Therefore, when using the writ to enforce a custody decree, the Florida court must make a finding that the requested change of custody is in the best interests of the child at the time the *286 matter comes on for hearing before that court. See generally 28 Fla.Jur.2d, Habeas Corpus § 67. Where the order appealed is unsupported by the legal effect of the evidence, it becomes the appellate court's duty to reverse. Matera v. Buchanan, 192 So.2d 18 (Fla. 3d DCA 1966).
574 So.2d at 210-211. (Emphasis added.)
The UCCJA as enacted in Florida has not displaced these principles of law traditionally applied in habeas corpus proceedings involving child custody.[2] On the contrary, it is only by determining the best interests of the child that the enforcing court can determine whether changes in circumstances intervening since entry of the order sought to be enforced would make it inequitable, unjust, or harmful to the child to enforce the other state court's custody decree. This is of particular significance in the case of an interlocutory order temporarily changing custody pending final determination of the issues raised in the petition for modification. The temporary custody ordered by the Tennessee court is obviously not a final custody order subject to change only by modification based on a substantial change in circumstances; it merely orders temporary custody pending final determination of the grandparents' petition for modification, presumably after further hearing. Consequently, as the Florida Supreme Court observed in Crane v. Hayes, quoted supra, this order is not res judicata on the issue of changing custody, so the Florida court has a duty on petition for writ of habeas corpus to determine the child's best interest.
The court below expressly recognized that the foregoing principles were applicable upon review of this temporary custody order in this habeas corpus proceeding, reciting that "the controlling consideration in awarding custody of such a child is the best interest of that child." The trial court explicitly ruled, after taking evidence, that the best interest of the child required that the petition for a writ of habeas corpus be denied and custody left with the appellee mother. This explicit ruling, being supported by the evidence, is dispositive of this appeal. The trial court's determination of the child's best interest was required by Florida law in passing on the petition for the writ of habeas corpus regardless of whether the Tennessee court had exercised its jurisdiction in accordance with the requirements of the UCCJA. Accordingly, for those reasons, the trial court's order is hereby AFFIRMED.
JOANOS, C.J., dissents with written opinion.
WIGGINTON, J., concurs.
ZEHMER, concurs with written opinion.
ZEHMER, Judge (concurring).
I fully concur in the decision to affirm the appealed order for the reasons stated in the majority opinion. There are, however, additional reasons for affirmance. The Tennessee court's failure to comply with minimum requirements of the UCCJA and Tennessee jurisdictional statutes provides *287 further equally compelling grounds for not enforcing the Tennessee court order.

I.
At the outset, it is important to keep in mind that the issue before us does not involve the Florida court's exercise of jurisdiction and power to modify custody from that ordered by the Tennessee court's final decree. That decree gave the appellee mother custody of the minor child, as between her and the child's father, and pursuant to that decree she asserts her right to continued custody. The paternal grandparents sought a modification of that original decree to obtain custody for themselves. However, the Tennessee order presented to the Florida court for enforcement was not a final order of modification but only an order temporarily changing custody to the grandparents pending final decision on the petition to modify custody.[3] Thus, this case does not involve two separate states attempting to exercise jurisdiction to modify child custody in derogation of the other's jurisdiction under the UCCJA; it only involves the obligation of the Florida court to recognize and enforce the Tennessee court order under the circumstances shown in the record.
Clearly, under the circumstances shown in this record, both the Tennessee court and the Florida court have jurisdiction of the child in the sense that both courts have the power to carry out their respective functions under the UCCJA and respective state statutes. It appears that the Tennessee court has continuing jurisdiction over modification of custody because Tennessee was the child's home state within 6 months before appellants filed the petition to modify child custody. See § 36-6-203(1)(B), Tenn. Code Ann. (1988); § 61.1308(1)(a), Fla. Stat. (1989). The Florida court has jurisdiction because the child and his mother reside in Florida and have a significant connection with Florida, and substantial evidence concerning the child's present or future care, protection, training, and personal relationships is available in Florida.[4]See § 61.1308(1)(b), Fla. Stat. (1989); § 36-6-203(2), Tenn. Code Ann. (1988). The Tennessee court has continuing jurisdiction to enter an order modifying its original custody order provided it complies with all statutory requirements pertaining to modification when the child and mother are residing in another state. The Florida court, on the other hand, has jurisdiction to determine whether, in entering the order temporarily changing custody from the mother to the grandparents, the Tennessee court fully complied with the UCCJA requirements before it enforces that order and directs that the child be removed from the mother in Florida and returned to Tennessee.
Accordingly, upon being petitioned for a writ of habeas corpus to enforce temporary delivery of the child to the grandparents pursuant to the Tennessee court order, the Florida court below was required to hear the appellee mother's objections in an evidentiary proceeding and determine: (1) whether the Tennessee court had exercised its jurisdiction in accordance with the requirements *288 of the UCCJA and related Tennessee statutes, and (2) whether it was in the best interests of the child to change custody by enforcing the Tennessee order. E.g. Walt v. Walt, 574 So.2d 205 (Fla. 1st DCA 1991). That is precisely what the Florida trial court did in this case, and the record fully justifies its decision not to enforce the Tennessee court order under the circumstances shown.

II.
Although not argued as a separate point on this appeal, the Tennessee court order is facially invalid because it exceeds that court's jurisdiction authorized in section 36-6-204, Tennessee Code Annotated,[5] to award temporary custody to the grandparents pending resolution of their petition to modify the existing final decree giving custody to the mother. This section makes it perfectly plain that a Tennessee court has only limited jurisdiction to suspend temporarily enforcement of an existing custody decree. Not only does the Tennessee court order not contain a limitation to sixty (60) days and not make any finding that the child has been abandoned or has been subjected to or is immediately threatened with serious harm to life or with serious bodily injury, it is perfectly obvious that the child was not physically present within the state when the court purported to exercise its jurisdiction to temporarily suspend the final decree and transfer custody to the grandparents. The Tennessee court order fails to comport with the Tennessee jurisdictional statute in all of these respects. The Florida court is not required by the UCCJA to enforce such a facially invalid order.

III.
Appellants do not contend on this appeal that the Florida trial court's findings in respect to the child's best interest are not supported by competent substantial evidence in the record. Instead, the arguments urged by appellants are technical in nature, being premised entirely on the notion that the Florida court is prohibited by the UCCJA from going behind the face of the Tennessee court's order because the record demonstrated that the Tennessee court had jurisdiction to enter the order, and that the Tennessee court had given the appellee mother reasonable notice and an opportunity to be heard on the matter. However, the Tennessee court failed to comply with other essential requirements of the UCCJA in several respects, and these deficiencies fully support the trial court's decision to deny enforcement of the Tennessee court order under the UCCJA.[6]

*289 A.
As adopted in both states, the UCCJA requires that "reasonable notice and opportunity to be heard shall be given to the contestants." § 61.131, Fla. Stat. (1989). See also § 36-6-205, Tenn. Code Ann. The trial court ruled that the notice and opportunity to be heard given to appellee in regard to the grandparents' application for modification of custody was insufficient under principles of due process. The trial court characterized the grandparents' application as a proceeding supplementary to the original divorce action between appellee and her former husband, since the grandparents were different parties, and concluded "that due process of law requires she be served with supplemental process advising her of the consequences of her failure to respond or plead."
The only notice sent to appellee in respect to the Tennessee modification proceeding consisted of two letters from the attorney representing the grandparents. No formal notice filed with the clerk of the Tennessee court was ever served on the mother. As she was not represented by counsel at the time, the letters were sent to her personally. The first letter, dated September 15, 1989, simply stated: "Please find the enclosed petition filed in the circuit court for Stewart County, Tennessee." The second letter, dated October 23, 1989, was sent by certified mail and advised that the referenced case, i.e., "Meeks v. Parks," "has been set for court on November 20, 1989, at 10:00 a.m. in the Chancery Court for Stewart County in Dover, Tennessee." The mother was furnished no notice of hearing styled in the case and filed with the Tennessee court, nor was any order setting the matter for hearing entered by the court and served on her; she was never informed that her presence was desired by the court, or that her appearance was necessary to prevent a change of custody from her to the grandparents, or that her failure to appear personally with or without the child could result in a decision adverse to her; and she was never advised of her right to apply to the court to have the expenses of her personal appearance in Tennessee be paid by the moving party. In my view, the UCCJA clearly contemplates, and minimum due process requires, that notification of these matters be given to the appellee as a nonresident party.
Section 11(b) of the UCCJA [§ 61.1324(2), Fla. Stat. (1989); § 36-6-212(b) Tenn. Code Ann. (1988)] provides that if the presence of a party is required by the court and if such party "is outside this state with or without the child, the court may order that the notice given under section 5 [§ 61.1312, Fla. Stat. (1989); § 36-6-206, Tenn. Code Ann. (1988)] include a statement directing that party to appear personally with or without the child and declaring that failure to appear may result in a decision adverse to that party." Section 11(c) of the UCCJA [§ 61.1324(3), Fla. Stat. (1989); § 36-6-212(c), Tenn. Code Ann. (1988)] contains provisions for the court to require the moving party to pay necessary travel expenses to assure such appearance.[7] The obvious *290 purpose of these UCCJA provisions is to make certain that a nonresident party will be meaningfully notified of: (1) the court's expectation that the nonresident party will attend a scheduled hearing on modification of a prior custody order; (2) the potential adverse consequences that may ensue from a failure to appear when the court expects the nonresident party to attend the scheduled hearing; and (3) the authority of the court pursuant to section 11(c) of the UCCJA [§ 61.1324(3), Fla. Stat. (1989); § 36-6-212(c), Tenn. Code Ann. (1988)] to provide financial relief if that be necessary to enable the nonresident to attend. The provisions in this section prescribe the minimum contents of the notice under the UCCJA, no doubt to ensure compliance with the minimum requirements of due process, and are not to be confused with the manner of giving notice, that is, by service of process or by certified letter as specified in section 5 of the UCCJA. It is especially compelling that the notice of hearing on modification of custody actually sent to the nonresident party contain this information when that court, as did the Tennessee court in this case, expects that party to attend and declares that the nonresident party, by failing to appear, "is seeking again to frustrate the exercise of the jurisdiction of the court." While the trial court below did not cite to section 61.1324, it nevertheless reached the correct conclusion that the notice sent was inadequate based on due process considerations.

B.
Appellants' argument that the appellee mother had a reasonable opportunity to be heard is likewise without merit, even if it be assumed that she was given adequate notice of the hearing. The record reflects that appellee called appellants' attorney, who had sent her the letter regarding the November 20 hearing, and advised him that she wanted the hearing date changed because one of her children was ill. Calling the attorney was the reasonable thing for this woman untrained in the law to do in view of the fact that he alone had sent her informal notice of the hearing. She had received nothing directly from the court, and it may well have appeared to her that the attorney was in charge of setting the case for hearing. But the attorney declined to cooperate and, as things turned out, appellee's ill child was in the hospital on November 20, when the hearing was held in Tennessee. The record does not indicate that the Tennessee court was advised of this fact in regard to its expressed concern and speculation on the cause of her absence from the hearing; but one may safely assume, if we are to speculate, that the recitations in the Tennessee court order[8] would not have been made by any reasonable judge having knowledge that the mother's child was seriously ill and in the hospital at that time, and that she had requested the appellant's attorney to change the hearing date for that reason. If the Tennessee court made the recited finding with knowledge of the reason for appellee's nonappearance at the November 20 hearing, the Florida trial court would be well within its power under the UCCJA to rule that the Tennessee court did not exercise its jurisdiction in accordance with the requirements of the UCCJA. A contrary holding would not comport with Baird v. Baird, 374 So.2d 60 (Fla. 3d DCA 1979).

C.
Appellants argue that the Tennessee court did make a finding that it was in the child's best interest to have custody changed from his mother to the paternal grandparents. There is, however, no explicit ruling to that effect in the Tennessee order presented to the Florida court for enforcement. Appellants necessarily infer such a ruling from recitations in the Tennessee order that appellee was subjecting the child to an "unsafe environment" and an "unstable" environment to deny grandparents *291 visitation and to remove the child from the jurisdiction of the Tennessee court. These recitations are but conclusions or characterizations that must necessarily be based on specific underlying facts and are facially insufficient to justify a modification of the prior custody decree in the absence of more specific findings of the supporting facts. In view of this facial insufficiency of the order temporarily changing custody, the Florida court did not act beyond its power under the UCCJA in receiving evidence on the best interests of the child. I do not agree with appellants' argument that the Florida court's only function is to determine whether the foreign court had assumed jurisdiction under statutory provisions substantially in accordance with the UCCJA, and that its inquiry is limited to the considerations of due process notice and an opportunity to be heard previously discussed. As I construe the purpose and intent of the UCCJA, the Florida court being asked to enforce the Tennessee order for temporary change of custody is required to make a positive finding that it is in the best interests of the child to do so when faced with an order such as presented in this case.

D.
Finally, the Florida court should not enforce the Tennessee order because the order is "clearly punitive" in nature. Where a foreign decree is clearly punitive, i.e., where the foreign court awarded or changed custody simply because it was insulted by one parent disregarding its authority, another state is not required to enforce the order or decree pursuant to the UCCJA. Holt v. District Court, Etc., 626 P.2d 1336, 1344 (Okl. 1981); see also Commissioner's Note, Uniform Child Custody Jurisdiction Act § 13, 9 U.L.A. at 277 (1988). To be deemed punitive, it appears that such decree must have transferred custody solely to punish the alleged errant parent. Spaulding v. Spaulding, 460 A.2d 1360 (Me. 1983). There is every reason to conclude on this record that the Tennessee order was entered only to punish the absent mother because she had removed the child from the state of Tennessee and had failed to appear in court at the appointed time. The recitations in the order show that the Tennessee court was temporarily depriving her of custody because she was frustrating the exercise of the court's jurisdiction.[9]
In sum, the trial court below was entirely justified in declining to enforce the Tennessee order presented to it for the reasons stated in the majority opinion and the additional reasons stated above.
JOANOS, Chief Judge, dissenting.
The order on appeal which refused to enforce the Tennessee custody order should be reversed.
The Florida trial court had before it a situation in which the Appellee Meeks had chosen to ignore a Tennessee proceeding, and then decided to ignore the order entered pursuant to that proceeding. In avoiding the Tennessee order, our trial court erroneously found that due process of law required that Meeks be "served with supplemental process advising her of the consequences of her failure to respond or plead." It is clear that mere notice of supplementary proceedings is all that is required. Timmers v. Harbor Federal, 548 So.2d 282 (Fla. 1st DCA 1989). Further, the Uniform Child Custody Jurisdiction Act, to which both Tennessee and Florida subscribe, requires that reasonable notice and the opportunity to be heard shall be given to the contestants, to any parent whose parental rights have not previously been terminated, and to any person who has physical custody of the child. § 61.131, Fla. Stat. (1989); Tenn.Code § 36-6-206 (1989). The required notice was afforded Meeks. There simply was no requirement that Meeks be advised specifically of the consequences of her failure to respond.
The Florida trial court was also in error in concluding that the Tennessee court was not concerned with the best interest of the child, thereby denying the relief sought by *292 the Lees. The Tennessee order specifically stated that Meeks was subjecting the child to an unsafe environment in order to remove the child from the jurisdiction of the Tennessee court. It is important to recognize that Meeks initiated the original proceedings in Tennessee, thereby subjecting herself and the child to the Tennessee court.
There is nothing whatever to indicate that the Tennessee court has anything but the best interest of the child in mind. The order sought to be honored did not award permanent custody to the Lees without considering Meeks. Rather, it merely ordered temporary custody, based upon the evidence presented. The order sought to preserve the Tennessee court's jurisdiction over the matter, and Meeks should be required to submit to that jurisdiction without affording her an opportunity to forum shop. After all, that is precisely what the UCCJA was designed to prevent. § 61.1304, Fla. Stat. (1989).
The Florida trial court was also in error in attempting to go to the merits of the child custody question. The UCCJA provides:
The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this act, or which decree was made under factual circumstances meeting the jurisdictional standards of the act, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this act.
§ 61.1328, Fla. Stat. (1989).
My disagreement with the view expressed by the majority opinion here, concerning the relationship between the UCCJA and habeas corpus, was set forth in Walt v. Walt, 574 So.2d 205 (Fla. 1st DCA 1991). The Walt case was decided by the same majority that decided this case. In short, I cannot believe that the UCCJA was not intended to apply to situations involving the writ of habeas corpus. I dissent.
NOTES
[1] See sections 61.1302-61.1348, Florida Statutes (1989); and sections 36-6-201-36-6-225, Tennessee Code Annotated (1988).
[2] Section 61.1304, Florida Statutes (1989), provides in part:

The general purposes of this act are to:
(1) Avoid jurisdictional competition and conflict with the courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.
(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in the state which can best decide the case in the interest of the child.
(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where the significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.
* * * * * *
(6) Avoid relitigation of custody decisions of other states in this state insofar as feasible.
(7) Facilitate the enforcement of custody decrees of other states.
(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.
[3] The full text of the Tennessee order reads:

This cause came on to be heard on the 20th day of November, 1989, before the Honorable Robert Burch, Circuit Judge, upon the Petition filed by JACKIE EDWARDS PARKS, GLEN LEE and ADA LEE on the testimony of witnesses in open court the Court finds as follows:
That it is the intent of GLENDA S. MEEKS to frustrate any exercise of jurisdiction by this Court, she has evidenced and [sic] unwillingness to allow proper visitation with the parties minor child and she is now subjecting the child to unsafe environment for at least partially the purpose to deny visitation, GLENDA S. MEEKS has moved from a stable environment to an unstable one to remove the child from the jurisdiction of the Court; she had actual notice of the hearing and choose [sic] not to be present therefore the Court finds she is seeking again to frustrate the exercise of the jurisdiction by this Court;
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that temporary custody of JACKIE EDWARDS PARKS, JR., be awarded to GLEN LEE and ADA LEE the child's paternal grandparents pending further orders of this Court.
The costs of this cause are assessed GLENDA S. MEEKS for which execution may issue.
[4] The record shows that the child, his mother, stepfather, twin sisters, and maternal grandmother live in Florida, and that the child attends kindergarten and counseling sessions in Florida.
[5] Section 36-6-204, Tennessee Code Annotated, set forth in part 2 of Chapter 6 of the Tennessee Statutes embracing the UCCJA, provides:

36-6-204. Temporary decree  Obtaining permanent custody decree.  (a) A court of this state which is competent to decide child custody matters has limited jurisdiction to suspend temporarily enforcement of an existing decree and to make a temporary decree for a period not longer than sixty (60) days if the child is physically present in this state and:
(1) The child has been abandoned; or
(2) It is necessary in an emergency to protect the child because the child has been subjected to or is immediately threatened with serious harm to life or with serious bodily injury.
(b) In order to obtain a permanent custody decree, the petitioning party shall file in a state which has jurisdiction as set out in § 36-6-203.
[6] Although the Florida court's order found a deficiency in the Tennessee court proceedings based on the grandparents' failure to serve appellee with supplemental process in pressing their personal claim to custody of the child, neither that order nor the briefs have focused on the legal right of a grandparent to obtain custody from a natural parent. The record shows that at some point in time subsequent to the final dissolution of marriage, the Tennessee court terminated the father's visitation rights due to his drinking problem, and awarded grandparent visitation rights to the child's paternal grandmother, Mrs. Lee. In this petition for modification, Mrs. Lee and her husband, the child's step-grandparent, sought modification of visitation and custody. Instead of simply redetermining the grandparent visitation rights, the Tennessee court ordered that the appellee be temporarily divested of custody of her child and that such custody be invested in appellants. In Florida, grandparents do not have legal standing to seek custody of a child in a dissolution case. § 61.13(2)(b)2.c., Fla. Stat. (1989); Ruyle v. Murphy, 422 So.2d 318 (Fla. 1st DCA 1982); Harkness v. Harkness, 531 So.2d 749 (Fla. 5th DCA 1988); Cherry v. Cherry, 508 So.2d 782 (Fla. 5th DCA 1987). Section 36-6-101(a), Tennessee Code Annotated (1991), provides that in a suit for annulment, divorce, or separate maintenance, where custody of a minor child or minor children is a question, the court may award custody "to either of the parties to the suit or to both parties in the instance of joint custody or shared parenting, or to some suitable person, as the welfare and interest of the child or children may demand... ." This section does not specify how "some suitable person" other than the parents can become parties to the divorce action. However, both Tennessee and Florida adhere to the principle that in a custody dispute between a parent and another person, even a grandparent, the parent has the right to custody unless he or she is found to be unfit. Bushman v. Bushman, 475 So.2d 730 (Fla. 1st DCA 1985); Harkness v. Harkness, 531 So.2d 749 (Fla. 5th DCA 1988); Cherry v. Cherry, 508 So.2d 782 (Fla. 5th DCA 1987); Besade v. Besade, 312 So.2d 484 (Fla. 3d DCA 1975); Bush v. Bush, 684 S.W.2d 89 (Tenn. App. 1984) (noting that this principle is established in cases throughout the country). Because the Tennessee court made no finding that appellant was an unfit mother, its award of custody to appellees was in direct contravention of this well-established principle.
[7] Section 11(c) of the UCCJA states:

If a party to the proceeding who is outside this state is directed to appear under subsection (b) or desires to appear personally before the court with or without the child, the court may require another party to pay to the clerk of the court travel and other necessary expenses of the party so appearing and of the child if this is just and proper under the circumstances.
(Emphasis added).
[8] The order recited that appellee "had actual notice of the hearing and choose [sic] not to be present therefore the Court finds she is seeking again to frustrate the exercise of the jurisdiction by this Court... ."
[9] See footnote 1.